The STATE of Texas, Appellant,

v.

Michael Stephen HORNER, Appellee.

No. 05–94–00963–CR.

Court of Appeals of Texas,
Dallas.

Aug. 23, 1996.

Jeffrey B. Keck, Dallas, for appellee.

Michael J. Sandlin, Assistant District Attorney, Dallas, for appellant.

Before OVARD, CHAPMAN and MORRIS, JJ.

## OPINION

CHAPMAN, Justice.

The State appeals from an order granting appellee Michael Horner's motion to dismiss with prejudice a murder indictment based on preindictment delay. The State contends that the trial court erred in its determination that the State's indictment of Horner over eleven years after the murder violated Horner's speedy trial and due process rights. We reverse the trial court's order granting the motion to dismiss and remand this cause to that court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Horner was indicted on January 21, 1994 for the murder of Gustavo Salazar. The indictment alleged that the offense occurred on August 20, 1982. Horner filed a motion to dismiss the indictment, alleging that the delay in charging him with the offense denied him his right to a speedy trial and his right to due process.

At a hearing on the motion to dismiss, retired Dallas Police Detective Robert Counts testified that he investigated Salazar's murder after it occurred in 1982. Horner was a suspect from the beginning. Counts located a witness to the crime in Houston, Valentine Ibanez. In January 1983, Counts went to Houston to show Ibanez a photographic lineup; Ibanez identified Horner. Although Counts prepared a case file and took steps to file it on March 5, 1983, the case was not actually filed. Counts was unable to explain why the case was not filed. He testified that he did everything necessary to get the case filed.[1] He assumed that some "clerical person" dropped the ball. Counts was waiting for the police to arrest Horner before he was required to do further paperwork. A warrant for Horner's arrest was never issued. When Counts retired in September 1984, his cases were reassigned to other detectives.

---

1. Counts testified that the typical procedure he followed to get a case filed was: (1) handwrite the report, (2) give the report to a typist, (3) review and sign the report after it was typed, and (4) send it "through the channels to the legal liaison," who would file the case with the District Attorney's Office.

Detective Detamble started working on this murder case in late 1993. He was assigned to review unsolved cases in the Dallas Police Department archives, to determine if they could be solved through DNA testing. Although this case does not involve DNA evidence, Detamble came across it and discovered that no murder case had been filed. Detamble's investigation revealed that Horner's case had been suspended pending his arrest. Detamble testified that there was nothing in the police file to indicate Horner had been contacted about this case or knew that a case against him was pending. In November 1993, Detamble contacted Ibanez and showed him another photographic lineup. Ibanez again identified Horner, and on December 28, 1993 Detamble filed the case. Horner was indicted on January 21, 1994 and arrested thereafter in New Jersey.

Horner testified on his own behalf at the hearing. Horner stated that he had lived in the same apartment with Salazar, the victim. Horner denied any involvement in the murder. He stated that his common-law wife had died of a heart attack in 1988 and that she was his primary alibi witness. Horner testified that, at the time of the offense, he, his wife, and two of their children were at James's house watching TV. Although James was a potential alibi witness, Horner knew James only by his first name and had lost track of him. Further, when the murder occurred in August 1982, one of Horner's sons was four-and-a-half years old and the other was eight-and-a-half years old. Horner testified that there was a question about whether they would remember the event. According to Horner, on the day of the offense, he and his family went to James's residence because Ibanez had told him it would be a good idea for his family to clear out of the apartment. Horner got the impression that a big drug deal was going to take place.

Horner first heard of a possible murder charge when he was arrested in New Jersey in 1984 for a parole violation. A detective told him he was wanted for murder in Dallas, but when the detective called Dallas, he was told that authorities in Dallas did not have anything on Horner. Horner was never incarcerated due to the charge and admitted that he did not experience any anxiety or concern about the charge.

The trial court recessed the hearing to consider its ruling. A few weeks later, the trial court granted Horner's motion to dismiss the indictment with prejudice. The trial court made written findings of fact and conclusions of law. The court made the following conclusions of law: (1) the irreparable harm done to Horner due to the effective loss of his alibi witnesses violated his due process rights under the state and federal constitutions; (2) the speedy trial provisions of the state and federal constitutions are applicable to the pre-accusation delay in this case, and Horner's right to a speedy trial was violated; and (3) for each of the foregoing reasons, the prosecution of this cause must be dismissed.

## JURISDICTION

■ The State asserts that this Court has jurisdiction to consider this appeal under article 44.01 of the Texas Code of Criminal Procedure.[2] Horner maintains that the trial court's dismissal order was not appealable. Horner's reliance on *Taylor v. State*, 886 S.W.2d 262 (Tex.Crim.App.1994), is misplaced. *See id.* at 266 (pretrial determination of entrapment defense in accused's favor is in nature of acquittal and thus not appealable by State). We agree with the State that we have jurisdiction to consider this appeal. Article 44.01(a)(1) permits the State to appeal a trial court order if the order dismisses an indictment. TEX.CODE CRIM.PROC. ANN. art. 44.01(a)(1) (Vernon Supp.1996).

## SPEEDY TRIAL

■ In its third point of error, the State contends that the trial court erred in ruling that the prosecution in this cause must be dismissed because the delay violated Horner's speedy trial rights under the United States and Texas Constitutions. We agree. Preindictment delay does not trigger either

---

**2.** Although the State raises its jurisdictional argument in its first point of error, points of error are typically directed at the trial court's error.

*See* TEX.R.APP. P. 74(d). The State's point of error number one does not complain of any error. Consequently, we do not dispose of it.

state or federal constitutional speedy trial protection, but only state and federal constitutional due process protections. *Spence v. State,* 758 S.W.2d 597, 598 n. 1 (Tex.Crim. App.1988); *Traylor v. State,* 892 S.W.2d 447, 449 (Tex.App.—Beaumont 1995, pet. ref'd). The right to a speedy trial does not arise until the time the defendant is formally accused or arrested. *United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). In this case, Horner does not complain about any delay that occurred after his indictment or his arrest. Thus, the trial court erred in dismissing the indictment against Horner on state and federal speedy trial grounds. We sustain the State's third point of error.

## DUE PROCESS

In its second point of error, the State contends that the trial court erred in ruling that the delay of over eleven years between the murder and the return of the indictment violated Horner's due process rights.

The applicable statute of limitations is the primary guarantee against bringing an overly stale criminal charge. *Marion,* 404 U.S. at 322, 92 S.Ct. at 464. There is, of course, no statute of limitations for the offense of murder. Tex.Code Crim.Proc. Ann. art. 12.01(1) (Vernon 1977). But the statute of limitations does not fully define a defendant's rights with respect to the events occurring prior to indictment; the due process clause has a limited role to play in protecting against oppressive delay. *Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048; *Marion,* 404 U.S. at 325, 92 S.Ct. at 466.

The Supreme Court cases of *United States v. Marion* and *United States v. Lovasco* are consistently cited in cases of preindictment delay. In *Marion,* the Court held that the due process clause would require dismissal of an indictment if it were shown at trial that the pre-indictment delay: (1) caused substantial prejudice to the defendant's right to a fair trial and (2) was an intentional device to

gain a tactical advantage over the accused. *Marion,* 404 U.S. at 324, 92 S.Ct. at 465. In *Lovasco,* the Court stated, "*Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048–49. "We are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' ... and which define 'the community's sense of fair play and decency.' " *Id.*

In a recent preindictment delay case, the United States Court of Appeals for the Fifth Circuit, sitting en banc, interpreted *Marion* and *Lovasco. See United States v. Crouch,* 84 F.3d 1497 (5th Cir.1996) (en banc). We find this opinion instructive in this case. In *Crouch,* the defendants were indicted for several offenses, such as bank fraud and conspiracy, involving the handling of seven loans. *Id.* at 1500. Eight years passed between the date on which the offenses were alleged to have occurred and the date the indictment was returned. *Id.* The eight-year delay was due to the fact that the government had "insufficient personnel available to investigate or properly prepare the case." *Id.* at 1505.

The court in *Crouch* recognized that neither *Marion* nor *Lovasco* is "crystal clear" on the issue of how to evaluate a claim of due process violation based on a preindictment delay. *Crouch,* 84 F.3d at 1510. In *Crouch,* the Fifth Circuit was faced with resolving a split in the decisions from that court involving preindictment delay. Most Fifth Circuit cases applied the two-part test set out in *Marion,* while some applied a balancing test, balancing the extent of the actual prejudice and the governmental interests at stake. *Id.* at 1508–09. The court noted that there was support in *Marion* and *Lovasco* for either approach. *Id.* at 1510.

The Fifth Circuit decided that for preindictment delay to amount to a due process violation it must: (1) cause the accused substantial, actual prejudice and (2) have been

intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused or for some other impermissible, bad faith purpose. *Crouch,* 84 F.3d at 1514.[3] In so ruling, the court noted that grounding a due process violation on the basis of good faith but inadequate, ineffective, or insufficient governmental personnel leading to preindictment delay runs counter to basic constitutional principles. *Crouch,* 84 F.3d at 1512–13. It explained that the guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *Id.* at 1513. Thus, the due process clause is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. *Id.* (citing *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).[4]

In *Crouch,* the court ruled that the trial court should not have dismissed the indictment because the defendants did not show actual prejudice. *Crouch,* 84 F.3d at 1523. A showing of potential or possible trial prejudice does not suffice. Thus, the court noted that dismissal on the basis of actual, substantial prejudice prior to trial will rarely, if ever, be appropriate. *Id.*

> [W]here the claim of pre-indictment delay *is ruled* on prior to trial, the defense, which will frequently be in the best position to find or unearth exculpatory evidence allegedly lost due to delay or evidence that may adequately replace or substitute for it, has every incentive *not* to diligently search for or produce such evidence. At trial, however, the incentive is just the opposite.

*Id.* at 1516 n. 30. In all but the clearest and most compelling cases, instead of granting a motion to dismiss due to preindictment delay prior to trial, the trial court should carry the motion with the case and determine in light of the events at trial whether actual, substantial prejudice resulted from the delay. *Id.* at 1516.

The Texas Court of Criminal Appeals considered the issue of preindictment delay in *Spence v. State,* 795 S.W.2d 743 (Tex.Crim. App.1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991). In that opinion, the court quoted the two-part test from *Marion. Id.* at 749. The court of criminal appeals held that the defendant did not meet his burden to show that the delay, which was for investigative reasons, was an intentional delay designed to give the State a tactical advantage over him. *Id.* at 750 & n. 5; *see Spence,* 758 S.W.2d at 599 n. 3; *see also State v. Kuri,* 846 S.W.2d 459, 468–69 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (applying this test), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994). Similar to what happened in the Fifth Circuit, some Texas courts of appeals have applied a different standard. *See, e.g., Jaile v. State,* 836 S.W.2d 680, 687 (Tex. App.—El Paso 1992, no pet.); *Bevers v. State,* 811 S.W.2d 657, 664 (Tex.App.—Fort Worth 1991, pet. ref'd) (stating that to prove due process violation, defendant must show actual prejudice and that delay violates fundamental conceptions of justice).

■ We will apply the *Crouch* test in this case. In so doing, we note that when the court of criminal appeals has considered the issue of preindictment delay, although not specifically negligent delay, it used a similar approach. *See Spence,* 795 S.W.2d at 750 & n. 5; *Spence,* 758 S.W.2d at 599 n. 3. We conclude that for the delay in this case to amount to a due process violation it must have: (1) caused Horner substantial, actual prejudice and (2) been intentionally undertaken by the State for the purpose of gaining some tactical advantage over Horner or for

---

**3.** In a case decided after *Lovasco,* the Supreme Court, in *dicta,* took a similar approach. It stated that the Fifth Amendment requires dismissal of an indictment if the government's delay was a deliberate device to gain an advantage and the delay caused the accused actual prejudice. *United States v. Gouveia,* 467 U.S. 180, 192, 104 S.Ct. 2292, 2299–2300, 81 L.Ed.2d 146 (1984).

**4.** Also, preindictment delay generally favors the defense. "When delay is not the result of an intentional attempt to strengthen the government's case, it will very likely make more difficult proof of the accused's guilt." *Crouch,* 84 F.3d at 1508 n. 7 (citing *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring)).

some other impermissible, bad faith purpose. *See Crouch*, 84 F.3d at 1514.

Applying the above test, we conclude that the trial court erred in dismissing the indictment. In reaching this conclusion, we are mindful of the fact that the legislature set no limitation on the time within which to prosecute someone for murder. Nothing in this record suggests that the State intentionally delayed the case to gain a tactical advantage over Horner or otherwise acted in bad faith. In addition, Horner has shown only potential prejudice. Although Horner proved that his wife had died, he did not rule out the possibility of other alibi witnesses. *See Lovasco*, 431 U.S. at 785, 796, 97 S.Ct. at 2046, 2051–52 (although accused presented evidence that two material witnesses had died, trial court erred in dismissing indictment). In fact, Horner testified that, at the time of the murder, he and his family were at James's residence. Thus, according to Horner, James was a potential alibi witness. Horner testified that he had lost track of James, but did not show what attempt he made to locate him. Also, Horner's children were not called as witnesses to establish that they were too young to remember the incident. Nor did Horner present other evidence that his children were unable to give defensive evidence; he merely said there was a question about whether they could remember. Indeed, prior to trial, Horner had little incentive to find witnesses. Moreover, Horner has not been incarcerated for this offense and admitted that he did not suffer any anxiety or concern about the pending charges. As stated in *Marion*, "Events of the trial may demonstrate actual prejudice, but at the present time, [Horner's] due process claims are speculative and premature." *Marion*, 404 U.S. at 326, 92 S.Ct. at 466. We sustain the State's second point of error.

Accordingly, we reverse the trial court's dismissal order and remand the cause to the trial court for further proceedings consistent with this opinion.