The STATE of Texas, Appellant,

v.

Charles Franklin CONDRAN, Appellee.

Nos. 05–96–01313–CR, 05–96–01314–CR.

Court of Appeals of Texas, Dallas.

July 25, 1997.

Robert Udashen, Dallas, for Appellee.

Tom O'Connell, Criminal District Attorney, Angela Gholson D'Amore, Assistant Criminal District Attorney, McKinney, for Appellant.

Before LAGARDE, WHITTINGTON and JAMES, JJ.

## OPINION

JAMES, Justice.

The State appeals from the district court's order dismissing the prosecution against appellee Charles Franklin Condran pursuant to article 32.01 of the Texas Code of Criminal Procedure and barring further prosecution pursuant to article 28.061 of the Texas Code of Criminal Procedure. The State asserts three points of error. First, the State contends the district court erred in dismissing appellee's prosecution because the grand jury indicted appellee before the hearing on appellee's writ of habeas corpus, and therefore, the issue was moot. Second, the State contends articles 32.01 and 28.061 are unconstitutional because both articles violate the separation of powers doctrine. Last, the State contends the district court abused its discretion in finding the State did not have good cause for delaying the indictment. Because we conclude that article 28.061 violates the separation of powers doctrine and that appellee had to obtain a ruling on his article

32.01 complaint prior to indictment, we reverse the district court's order.

On May 1, 1994, the police arrested appellee for sexual assault. Subsequently, appellee posted bond with the condition he appear before the court to answer any criminal accusations against him. On June 27, 1995, the grand jury indicted appellee for sexual assault. On April 23, 1996, appellee filed an application for writ of habeas corpus requesting that the sexual assault indictment be dismissed because the State had not obtained the indictment pursuant to article 32.01.[1] On May 7, 1996, the grand jury re-indicted appellee for aggravated sexual assault for actions arising out of the same May 1, 1994 incident. On May 22, 1996, appellee filed an amended application for writ of habeas corpus requesting that both indictments be dismissed pursuant to articles 32.01 and 28.061.

On August 12, 1996, after hearing evidence on the merits of appellee's amended application for writ of habeas corpus, the district court granted the requested relief. The district court dismissed the prosecution for sexual assault and aggravated sexual assault pursuant to article 32.01 and barred further prosecution pursuant to article 28.061.

Before addressing the State's points of error, we find it necessary to set out the applicable law in question. Article 32.01 states:

> When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.

TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989). Article 28.061 acts as an enforcement mechanism for article 32.01. According to article 28.061, when a trial court discharg-

---

1. We note that habeas corpus relief was a proper remedy for appellee to challenge his confinement. *See Ex parte Robinson,* 641 S.W.2d 552, 553–54 (Tex.Crim.App.1982) (finding habeas corpus a proper remedy when a defendant is subject to conditions of bond because these conditions restrain his liberty within the meaning of Texas Code of Criminal Procedure article 11.01); *see also Nix v. State,* 882 S.W.2d 474, 474 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

es a defendant under article 32.01, it acts as a bar to further prosecution for the offense charged and for any other offense arising out of the same transaction. TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989).

In 1994, the district court terms in Collin County began on the first Monday in January and the first Monday in July. *See* TEX. GOV'T CODE ANN. §§ 24.302, 74.096 (Vernon 1988). Because the police arrested appellee on May 1, 1994, article 32.01 required the State to present an indictment or information against appellee before the end of the next term of court or by December 31, 1994. The State presented the first indictment against appellee on June 27, 1995 and the second indictment against appellee on May 7, 1996. It is undisputed that the State failed to indict appellee before the end of the next term of court after his arrest.

## I.

■ The State's second point of error attacks the constitutionality of articles 32.01 and 28.061. We are reluctant to decide constitutional questions unless absolutely necessary. *See Meshell v. State,* 739 S.W.2d 246, 250 (Tex.Crim.App.1987); *see also Burton v. State,* 805 S.W.2d 564, 574 (Tex.App.—Dallas 1991, pet. ref'd). Therefore, the party raising a constitutional claim must show a present injury before we decide an issue involving the constitutionality of a statute. *See Meshell,* 739 S.W.2d at 250; *see also Burton,* 805 S.W.2d at 574.

■ We first address whether the district court abused its discretion in finding the State did not have good cause for delaying the indictment. If the trial court did not abuse its discretion, the dismissal stands and the State is barred from further prosecution of appellee. Only a dismissal with prejudice will establish a present injury to the State. *See Meshell,* 739 S.W.2d at 250.

■ Appellee filed an application for writ of habeas corpus with the trial court. In a habeas corpus proceeding, the petitioner must show he is entitled to the relief he seeks. *See Hoang v. State,* 810 S.W.2d 6, 8 (Tex.App.—Dallas 1991), *aff'd,* 872 S.W.2d 694 (Tex.Crim.App.1993), *cert. denied,* 513

U.S. 863, 115 S.Ct. 177, 130 L.Ed.2d 112 (1994). We review the record as it existed before the district court at the time of the habeas hearing in the light most favorable to the ruling to determine whether the trial court abused its discretion. *See Ex parte Zavala,* 900 S.W.2d 867, 870 (Tex.App.—Corpus Christi 1995, no pet.).

At the habeas corpus hearing, the State presented evidence to support its contention that it had good cause for delaying the indictment. A factual summary of the offense and subsequent investigation follows:

At approximately 3:00 a.m. on May 4, 1994, a man driving a red sports car ran into the complainant's vehicle. When the complainant got out of her car to check the damage, the man pulled her onto the median and sexually assaulted her. The man left the scene in his vehicle after three people in another vehicle pulled up to the location. The complainant pursued him in her own vehicle in an attempt to determine his license number.

Officer Zander observed the cars travelling westbound on Park Boulevard and called for back-up. Zander stopped the complainant. Two back-up patrol cars observed and pursued a red sports car fitting the description given by the complainant that had emerged from a nearby side street. During the chase, appellee drove in excess of 80 miles per hour. The officers eventually overtook appellee and arrested him for outstanding warrants and as a suspect in the sexual assault. The officers took appellee back to where Zander had stopped the complainant's car. No one could positively identify appellee as the assailant or his vehicle as the assailant's vehicle.

Detective Billy Meeks investigated the sexual assault allegations. The preliminary investigation revealed that the assailant had brown hair, probably had mud stains on his trousers after the assault, and probably had scratches on his face from the complainant. Meeks met with appellee the night of his arrest. Appellee was wearing a pair of trousers with mud stains on the knees, had a scratch on his face, and had blond hair, although he said he used a spray to color his hair brown. Appellee denied sexually assaulting the complainant. Appellee ex-

plained that he had recently dropped off a hitchhiker at another location near the area where the assault occurred. He said the mud stains on his trousers were from a scuffle with another man earlier in the evening. Meeks made inquiries, but was unable to confirm any of these alleged facts. Later, Meeks learned that appellee's vehicle had a broken license plate bracket consistent with running into another vehicle.

On June 7, 1994, Meeks filed the case against appellee with the district attorney's office. After filing the case, Meeks sent the clothing he had collected the night of the offense to the Southwestern Institute of Forensic Science (SWIFS), which had a backlog of work because several technicians resigned between June and August 1994. In October, SWIFS contacted Meeks and requested hair samples from appellee to compare with a hair found on his trousers. Meeks said he made three attempts to set up an appointment with appellee to collect the sample. Finally, Meeks executed a search warrant for the hair samples on December 9, 1994. Meeks sent the samples to SWIFS on December 13, 1994. SWIFS gave Meeks the results on January 24, 1995.

Laura Britton, the assistant district attorney in charge of the grand jury, testified she accepted the case against appellee on June 20, 1994. Britton said she intended to place the case before the grand jury during the July 1994 term. Meeks asked her to hold the case until he received the forensic test results because no one could positively identify appellee as the assailant. On September 1, 1994, Britton sent Meeks a letter requesting that he notify her when SWIFS completed the testing. In November, she checked with Meeks to determine if SWIFS had reported the test results. Meeks advised her the tests could not be completed until Meeks could obtain hair samples from appellee.

Britton rescheduled appellee's case and presented it to the grand jury on January 31, 1995. Four witnesses, including Meeks, testified before the grand jury. The grand jury passed the case for further investigation. Britton reset the case for March 21, 1995. Because Meeks could not be present, Britton reset the case for April 4, 1995. Meeks did not appear on April 4, but Britton presented a polygraph test at the request of appellee and a videotape of Meeks's interview with appellee. The grand jury again passed the case for two weeks so they could hear from Meeks. Although Meeks testified on April 18, the grand jury once again passed the case. On June 20, 1995, the grand jury conducted further deliberations and passed the case for the fourth time. On June 27, 1995, the grand jury returned an indictment against appellee for sexual assault.

■ Article 32.01 requires good cause for delaying the indictment. TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989). "Good cause" remains undefined. In *Norton v. State*, 918 S.W.2d 25, 29 (Tex.App.—Houston [14th Dist.] 1996, pet. granted), the court said that the "good cause" exception allows the prosecutor to present factors such as those in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), or otherwise that might justify an untimely indictment. *Barker* sets out four factors for determining whether a defendant's right to a speedy trial has been violated. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The four factors include, but are not limited to, the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* The right to a speedy trial does not attach until a person is indicted or arrested. *State v. Horner*, 936 S.W.2d 668, 671 (Tex.App.—Dallas 1996, no pet.); *Stewart v. State*, 767 S.W.2d 455, 457 (Tex. App.—Dallas 1988, pet. ref'd). Therefore, preindictment delay does not trigger state or federal constitutional speedy trial protections. *Horner*, 936 S.W.2d at 670–71. A trial court may consider the *Barker* factors when determining whether good cause exists for delaying the indictment. We conclude, however, that using the *Barker* factors is not mandatory because they relate to a defendant's constitutional right to a speedy trial, not to preindictment delay.

Although we have determined a defendant's right to be free from undue preindictment delay differs from his right to a speedy trial, we find caselaw analyzing the statutory exceptions to article 32A.02 (the Speedy Trial Act) instructive. *See* TEX.CODE CRIM. PROC.

ANN. art. 32A.02 (Vernon 1989). We bear in mind that the court of criminal appeals declared the Speedy Trial Act unconstitutional in *Meshell. See Meshell,* 739 S.W.2d at 257. *Meshell* has impacted many prior decisions concerning a defendant's right to a speedy trial. Many exceptions to the Speedy Trial Act, however, correlate with the State's reasons in this case for delaying the indictment. The State cited the unavailability of the forensic test results as its primary reason for delaying the indictment. Because the complainant could not identify appellee as her assailant, the State wanted physical evidence linking appellee to the crime. The forensic tests were necessary to supply this link. Section four of the Speedy Trial Act included several exceptions that allowed the district court to toll the time in which the State had to be ready for trial. *See* TEX.CODE CRIM. PROC. ANN. art. 32A.02, § 4 (Vernon 1989). Section four included an exception for situations in which the district court granted a continuance because of the unavailability of evidence material to the State's case and a catch-all exception for any reasonable period of time justified by exceptional circumstances. TEX.CODE CRIM. PROC. ANN. art. 32A.02, § 4(6), (12) (Vernon 1989). Using caselaw interpreting these exceptions as a guide, we determine whether the trial court abused its discretion in finding the State did not show good cause for delaying the indictment.[2] In determining whether the trial court abused its discretion, we focus primarily on the State's reason for delaying the presentation of the case to the grand jury until January 24, 1995, which was the delay in obtaining the test results.

The State's delay in analyzing drug evidence, assertions that the grand jury had a full load of cases, or a mistake in processing a bail bond do not constitute exceptional circumstances under the Speedy Trial Act. *See McClellan v. State,* 742 S.W.2d 655, 656 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1048, 98 L.Ed.2d 1010 (1988); *see also Lloyd v. State,* 665 S.W.2d 472, 475 (Tex.Crim.App.1984). Likewise in *Meshell,* the court stated that a backlog, staff short-

age, or general negligence do not constitute an exceptional circumstance. *See Meshell,* 739 S.W.2d at 251.

In *Lloyd,* the State argued the time should have been tolled under the Speedy Trial Act because of unavailable evidence and the grand jury's full load of cases. *See Lloyd,* 665 S.W.2d at 475. The court of criminal appeals concluded that a full-load claim did not constitute an exceptional circumstance. *Id.* at 476. As for unavailable evidence, the assistant district attorney testified that he never presented a drug case to a grand jury without a chemist's report. *Id.* at 474. That case involved the delivery of marihuana. *Id.* at 473. Thus, the assistant district attorney said he needed the chemist's report before going to the grand jury. *Id.* at 475. The court noted that the State had complete control over the evidence for at least one month before submitting it to the laboratory. *See id.* Moreover, the court stated the chemist's report was unnecessary to prove probable cause for an indictment. *Id.* Instead, the officer's testimony would have sufficed. *Id.*

In reviewing this case, we cannot conclude the trial court abused its discretion in finding the State did not have good cause for delaying the indictment. The assault occurred on May 4, 1994. Meeks collected the clothing on the same day. Meeks waited a month before sending the clothes to SWIFS. The SWIFS technicians apparently resigned between June and August, which caused a backlog. Despite inquiries from the assistant district attorney in charge of the grand jury, Meeks did not seek another laboratory to conduct the forensic tests.

In October, SWIFS informed Meeks it needed a hair sample from appellee to complete the tests. Meeks waited approximately two months before obtaining a search warrant. Once Meeks collected the sample, he waited another week before sending it to SWIFS.

Both Meeks and Britton testified that the case consisted of circumstantial evidence. They wanted the results from SWIFS before

---

2. A trial court abuses its discretion when it acts without reference to any guiding rules and principles or in an arbitrary or unreasonable man-

ner. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

going to the grand jury in hopes the results would show a concrete link between appellee and the sexual assault. Thus, the State delayed presenting the case to the grand jury to seek an indictment until after the December 31, 1994 statutory deadline to obtain further evidence. Considering previous caselaw interpreting an exceptional circumstance under the Speedy Trial Act and the fact the State needed only probable cause to obtain an indictment against appellee, we cannot conclude under these facts that the district court abused its discretion. We overrule the State's third point of error.

## II.

■ Because the district court did not abuse its discretion, the State is barred from prosecuting appellee unless article 32.01 or article 28.061 is unconstitutional. As discussed previously, this bar to further prosecution establishes a present injury to the State. *See Meshell*, 739 S.W.2d at 251. As such, we now consider the State's second point of error and determine the constitutionality of articles 32.01 and 28.061. Specifically, we determine whether articles 32.01 and 28.061 deprive the State of its right to perform exclusive prosecutorial functions thereby violating the separation of powers doctrine.

We address recent court of appeals cases that have held either article 32.01 or 28.061

constitutional.[3] Because so few courts have analyzed the constitutionality of both articles 32.01 and 28.061, we will also discuss their constitutionality in relation to similar provisions such as the Speedy Trial Act and article 17.151 of the Texas Code of Criminal Procedure.[4]

### Norton v. State

Although other courts have discussed articles 32.01 and 28.061, the Fourteenth District Court of Appeals is the only court that has addressed the constitutionality of article 32.01. *Norton v. State*, 918 S.W.2d at 28–29. In *Norton*, the State compared article 32.01 with the Speedy Trial Act and argued that article 32.01 was unconstitutional for failing to incorporate the *Barker* factors.[5] *Id.* The court articulated article 32.01's purpose as protecting "an accused from being arrested without being formally charged by information or indictment within a specified amount of time." *Id.* at 29. The court concluded article 32.01's requirement that the State return an indictment within a specified amount of time was far less burdensome than being ready for trial within a specified amount of time. *Id.* The court noted that the time restraints of article 32.01 were less burdensome than those under the Speedy Trial Act. *Id.* Under article 32.01, the State has between six and twelve months to obtain an indictment whereas under the Speedy Trial

---

**3.** The only court to discuss the constitutionality of article 32.01 is the Fourteenth District Court of Appeals in *Norton. See Norton*, 918 S.W.2d at 28–29. The only court to discuss the constitutionality of article 28.061 is the First District Court of Appeals in *Nguyen v. State*, 882 S.W.2d 471, 473 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), and *Nix v. State*, 882 S.W.2d 474, 476 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). *See, e.g., Ex parte Lawson*, No. 04–96–00265–CR, slip op. at 2–7, —— S.W.2d ——, —————— (Tex. App.—San Antonio Dec.26, 1996, no pet.) (applying articles 32.01 and 28.061 in the context of a late indictment when the State did not raise a constitutionality question).

**4.** We note that the Fourteenth District Court of Appeals has recently held that article 51.14 of the Texas Code of Criminal Procedure does not violate the separation of powers doctrine. *See State v. Williams*, 917 S.W.2d 417, 419 (Tex.App.—Houston [14th Dist.] 1996), *aff'd*, 938 S.W.2d 456 (1997). Article 51.14 allows the State to request the transfer of a prisoner from another sover-

eign. Tex.Code Crim. Proc. Ann. art. 51.14 (Vernon 1981). Once the prisoner arrives, the State must commence its trial against the prisoner within 120 days of his arrival or the court may dismiss the charges against the prisoner with prejudice. *Id.* The State argued that article 51.14 violated the separation of powers doctrine. *Williams*, 917 S.W.2d at 418. The court concluded that the statute did not unreasonably interfere with the prosecutor's discretion and was an efficient mechanism for procuring the attendance of foreign prisoners. *Id.* at 419. Although we have read the court's analysis, we do not find it meaningful in the context of articles 32.01 and 28.061.

**5.** As discussed in section I of this opinion, the *Barker* factors are relevant in determining whether the defendant has been deprived of his constitutional right to a speedy trial. Therefore, the *Barker* factors are only instructive in determining whether the State failed to indict the defendant in a timely fashion.

Act, the State had to be ready for trial within 180 days of the commencement of felony criminal proceedings against the defendant. *Id.*

The court also noted that article 32.01 included a good cause exception to dismissal. *Id.* Thus, the State could present factors, such as those in *Barker* or otherwise, to justify an untimely indictment. *Id.* Because article 32.01 was less burdensome than the Speedy Trial Act and included an exception, the court did not believe article 32.01 violated the separation of powers doctrine.[6] *Id.* The court failed to specifically address the State's contention that article 28.061 was unconstitutional.

### Nguyen v. State and Nix v. State

In two cases released at the same time, the First District Court of Appeals declared article 28.061 constitutional. *See Nguyen v. State,* 882 S.W.2d 471, 473 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Nix v. State,* 882 S.W.2d 474, 476 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). In both cases, the State argued that because the court of criminal appeals had declared article 28.061 unconstitutional in *Meshell,* it was void and could not apply to untimely indictments under article 32.01. *See Nguyen,* 882 S.W.2d at 472; *Nix,* 882 S.W.2d at 475. The appellees argued that because the legislature amended article 28.061 after *Meshell,* it remained a viable enforcement mechanism for article 32.01. *See Nguyen,* 882 S.W.2d at 473; *Nix,* 882 S.W.2d at 475.

Prior to *Meshell,* article 28.061 stated:

> If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction.

*See* Act of May 22, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885, 1885.

Currently, article 28.061 provides:

> If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article *or Article 32.01* of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute.

TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989) (adopted June 17, 1987) (emphasis added).

In both cases, the court concluded that the amended version survived *Meshell* as applied to article 32.01 because the current version of article 28.061 became effective after *Meshell. Nguyen,* 882 S.W.2d at 473; *Nix,* 882 S.W.2d at 476. Thus, article 28.061 enforces article 32.01 by barring further prosecution for offenses committed on or after the effective date of the statute, September 1, 1987. *Id.*

We note, however, that the court of criminal appeals issued *Meshell* on July 1, 1987. *Meshell,* 739 S.W.2d at 246. Although article 28.061's amendments became effective on September 1, 1987, the legislature approved the amendments on June 1, 1987, one month before *Meshell. See* Act of May 22, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885, 1885 (current version at TEX. CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989)). Thus, the First District assumed the legislature amended article 28.061 after considering *Meshell,* an unfounded assumption that is contrary to article 28.061's legislative history. We decline to follow the First District's reasoning in regard to article 28.061. We analyze both articles 32.01 and 28.061 in relation to the decisions of *Meshell, Jones v. State,* 803 S.W.2d 712 (Tex.Crim.App.1991), and *Norton.*

---

6. Without commenting on the correctness of the court's analysis, we note that the Speedy Trial Act contained numerous exceptions including a broad exception for a reasonable delay caused by exceptional circumstances. *See* TEX.CODE CRIM. PROC. ANN. art. 32A.02, § 4 (Vernon 1989).

### Meshell v. State

The court of criminal appeals held the Speedy Trial Act and article 28.061 unconstitutional because they violated the separation of powers doctrine. *See Meshell*, 739 S.W.2d at 257. The Speedy Trial Act required the State to be ready for trial within 180 days after the commencement of a felony criminal action or risk dismissal of the indictment with prejudice. *See* Tex.Code Crim. Proc. Ann. art. 32A.02, § 1(1) (Vernon 1989); *see also Meshell*, 739 S.W.2d at 250. A felony criminal action commenced when the State obtained an indictment or the police arrested the defendant. *Meshell*, 739 S.W.2d at 250. First, the defendant had to make a claim under the Speedy Trial Act and then the State had to prove its readiness for trial. *Id.* If the district court sustained a defendant's motion under the Speedy Trial Act, the district court would discharge the defendant and bar any further prosecution. *See* Tex. Code Crim. Proc. Ann. art. 28.061 (Vernon 1989).

In *Meshell*, the State failed to be ready within 180 days after the commencement of the felony criminal action and the district court dismissed the indictment with prejudice. *Meshell*, 739 S.W.2d at 249. The State claimed that the Speedy Trial Act deprived the prosecuting attorney of "his right to exercise judgment and discretion in performing his exclusive prosecutorial function." *Id.* at 252.

The court first had to determine whether the county attorney was entitled to protection under the separation of powers doctrine. *See id.* at 253. The court concluded that by placing the county attorney's office under Article V, the authors of the Texas Constitution included county attorneys within the judicial branch. *See id.* at 253 n. 9; *see also* Tex. Const. art. V, § 21. According to the court, article V, section 21 granted the exclusive right to the county attorney "to represent the State in all cases in the District and inferior courts." *Meshell*, 739 S.W.2d at 252. As such, the county attorneys were entitled

to protection under the separation of powers doctrine. *Id.*

The court concluded that the legislature could not remove or abridge the constitutional duties of the county attorneys unless the constitution expressly so provided. *See id.* at 254. Although article V, section 21 did not enumerate the duties of the county attorneys, the court recognized their primary function was "to prosecute the pleas of the State in criminal cases." *Id.* To prosecute the pleas of the State, a county attorney had to utilize his own discretion in preparing cases for trial. *Id.* Thus, the legislature could not remove or abridge a county attorney's exclusive prosecutorial function unless authorized by an express constitutional provision. *Id.* at 254–55.[7]

The court recognized that by enacting the Speedy Trial Act, the legislature had attempted to provide procedural guidelines to enforce a defendant's constitutional right to a speedy trial. *Id.* at 255. Instead of providing for the speedy commencement of trial, however, it directed the prosecutor's preparation and ultimate readiness for trial. *Id.* Although the court acknowledged that the legislature's enforcement of a defendant's right to a speedy trial may require some intrusion into the prosecutor's discretion to prepare for trial, the court stated the Speedy Trial Act was not directed at the speedy commencement of trial as were other state and federal speedy trial clauses. *Id.* at 256.

The court noted other state and federal speedy trial clauses sometimes attributed to the prosecutor a delay in commencing trial, even if it was the result of negligence or staff shortage. *See id.* These clauses assured the speedy commencement of trial by focusing on the *Barker* factors. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Because the Speedy Trial Act failed to incorporate the *Barker* factors, the court concluded the Speedy Trial Act seriously encroached upon a prosecutor's exclusive function.

The court found the legislature's failure to incorporate the *Barker* factors shifted the

---

7. The concurring opinion in *Norton* found constitutional support for article 32.01 in Tex. Const. art I, § 10 which provides "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury."

focus from the defendant's constitutional right to a speedy trial to whether the prosecutor was ready for trial within a specified time limit. *See id.* at 257. The act gave no consideration to the prosecutor's reason for the delay. *Id.* at 256. Neither negligence nor a backlog mitigated any delay in obtaining the accused's presence at trial. *Id.* Instead of ensuring a speedy trial, the act ensured only the speedy announcement of ready. *Id.* at 257.

Because the court relied on the lack of *Barker* factors in holding the Speedy Trial Act unconstitutional, we conclude a short discussion of *Barker* is necessary to a complete understanding of the holding in *Meshell.*

The Supreme Court first established the *Barker* factors as a balancing test in determining whether a defendant's constitutional right to a speedy trial had been violated. *Barker,* 407 U.S. at 530–32, 92 S.Ct. at 2192–93. The Court's goal was to establish some type of test that lower courts could use to determine whether a defendant's right to a speedy trial had been violated. *See id.*

The Court noted that a defendant's right to a speedy trial was more amorphous or vague than other procedural rights. *Id.* at 521, 92 S.Ct. at 2187. The Court examined two approaches that various legislatures and courts had adopted to define a defendant's right to a speedy trial. *Id.* at 523, 92 S.Ct. at 2188. For example, the Second Circuit had promulgated rules that required the government to be ready for trial within six months of the date of the arrest absent unusual circumstances. *Id.* Other states had promulgated a demand-waiver rule in which the defendant had to assert his right to a speedy trial or waive it. *Id.* at 526, 92 S.Ct. at 2190. The Court rejected a rule that would set a specific time period because it would require the Court to engage in legislative or rule-making activity. *Id.* at 523, 92 S.Ct. at 2188. The Court noted that "[t]he States, of course, are free to prescribe a reasonable period *consistent with constitutional standards.*" *Id.* at 523, 92 S.Ct. at 2188 (emphasis added). The Court also rejected the demand-waiver rule as it was not consistent with the Court's prior pronouncements concerning the re-

quirement of an affirmative waiver of constitutional rights. *Id.* at 525, 92 S.Ct. at 2189.

The Court then proceeded to devise four factors courts could utilize in determining whether the defendant's right to a speedy trial had been violated. *Id.* at 530–32, 92 S.Ct. at 2192–93. These four factors, however, are only *some* of the factors courts should assess in determining whether a defendant has been deprived of his right to a speedy trial. *Id.* at 530, 92 S.Ct. at 2192. The Court believed the four factors were neither a necessary nor sufficient condition to the finding of the deprivation of the right to a speedy trial. *Id.* at 533, 92 S.Ct. at 2193. Instead, the factors are interrelated and must be considered with other relevant factors. *Id.* Therefore, *Barker* establishes the minimum guidelines courts must follow in determining whether a defendant's right to a speedy trial has been violated. Further, *Barker* is broad enough that even if a state legislature has promulgated a rule requiring the state to proceed to trial within a specified time, the courts can still utilize the *Barker* factors when determining whether an unusual or extraordinary circumstance existed for the delay. Even if statutes utilize the *Barker* factors, however, the constitutionality of the statute is not guaranteed.

Therefore, in *Meshell,* the court of criminal appeals concluded the legislature had exceeded its authority in enacting the Speedy Trial Act by exerting excessive control over the county attorney's discretion in preparing cases for trial. *Meshell,* 739 S.W.2d at 257. The legislature could intrude on the county attorney's discretion only if a constitutional provision expressly granted the power. *Id.* Because the court was not aware of any express constitutional provision, the court held the Speedy Trial Act unconstitutional. *Id.* The court also declared article 28.061 unconstitutional as the legislature would not have enacted the Speedy Trial Act without the enforcement mechanism of article 28.061. *Id.* at 258.

### Jones v. State

In *Jones v. State,* 803 S.W.2d 712 (Tex. Crim.App.1991), the court seemingly modified its approach. In *Jones,* unlike *Meshell,*

the court focused on whether the legislature "unduly interfered" with a prosecutorial function. *Id.* at 716. After taking into consideration the fact that the legislature could create a new right and that article 17.151 did not unduly interfere with the role of the prosecutor, the court concluded that article 17.151 did not violate the separation of powers doctrine. *Id.*

Article 17.151, in relevant part, states:
A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony.
TEX.CODE CRIM. PROC. ANN. art. 17.151(1) (Vernon Supp.1997). The Fort Worth Court of Appeals stated that article 17.151 "is a constitutionally impermissible infringement on the judicial branch by the legislature" and therefore "suffers similar constitutional defects as noted by the Court of Criminal Appeals in the Speedy Trial Act, article 32A.02." *See Jones v. State,* 780 S.W.2d 506, 509–10 (Tex.App.—Fort Worth 1989), *rev'd,* 803 S.W.2d 712 (Tex.Crim.App.1991); *see also Meshell,* 739 S.W.2d at 246. The court concluded that article 17.151 encroached upon the prosecution's discretion in preparing cases for trial by forcing the attorneys to bring criminal prosecutions within a short period of time or allow the release of the defendant upon any bail, however low. *Jones,* 780 S.W.2d at 510. The Fort Worth Court concluded that article 17.151 was a tighter constraint than the Speedy Trial Act because it did not provide for any exceptions that would toll the time in which the attorneys had to bring criminal prosecutions. *Jones,* 780 S.W.2d at 510 n. 4.

The court of criminal appeals began its review of article 17.151 by analyzing the two methods of violating the separation of powers doctrine. *Jones,* 803 S.W.2d at 715. First, a violation of the separation of powers doctrine occurs when one branch of government assumes a power more properly attached to another branch. *Id.* Second, a violation occurs when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Id.*

The court considered whether the legislature "assumed" a prosecutorial function or "unduly interfered" with a prosecutor's discretion in preparing cases for trial. *Id.* at 716. As noted in *Meshell,* the court stated that the legislature could establish a new right under its general plenary power if the right did not infringe upon another department's power. *Id.* (citing *Meshell,* 739 S.W.2d at 255 n. 13). The legislature had established a new right by providing for the release of an accused if the State was not ready for trial within a designated time period. *Jones,* 803 S.W.2d at 716. Thus, the question remained whether the legislature had unduly interfered with the prosecutor's discretion in preparing cases. *Id.*

The court concluded that article 17.151 was less burdensome upon a prosecutor's discretion than the Speedy Trial Act because the prosecutor could proceed with his case even if he was not prepared to proceed to trial within the specified time under article 17.151. *Id.* The only relief an accused could obtain under article 17.151 was release from jail or a reduction of bail. *Id.* Article 17.151, therefore, ensured that a person presumed innocent under our accusatory system would not suffer "the incidental punitive effect of incarceration." *Id.* (citing *Ex parte Green,* 688 S.W.2d 555, 557 (Tex.Crim.App.1985)).

### Separation of Powers

■ We follow *Meshell* and *Jones* in that we consider the district attorney of Collin County part of the judicial branch, and therefore, entitled to protection under the separation of powers doctrine. *See Jones,* 803 S.W.2d at 715; *see also Meshell,* 739 S.W.2d at 253–56. The separation of powers doctrine provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another;

and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. This doctrine prohibits one branch of government from interfering with another branch's exclusive power unless an express provision of the constitution authorizes the action. *See Meshell,* 739 S.W.2d at 254. It is clear, however, that the legislative branch may define certain parameters within the operation of the judicial branch. *See Williams v. State,* 707 S.W.2d 40, 45 (Tex.Crim.App.1986); *Armadillo Bail Bonds v. State,* 772 S.W.2d 193, 195 (Tex. App.—Dallas 1989), *aff'd,* 802 S.W.2d 237 (Tex.Crim.App.1991). These parameters include penalties, procedures (as in the Texas Code of Criminal Procedure), and rules of evidence. *See Williams,* 707 S.W.2d at 45. Although the legislative branch may have authority over judicial "administration," the legislative branch cannot "infringe upon the substantive power of the Judicial department under the guise of establishing 'rules of court.'" *Meshell,* 739 S.W.2d at 255.

▆ In determining whether article 32.01 violates the separation of powers doctrine, we must determine whether the legislature assumed a prosecutorial function or unduly interfered with one. *See Jones,* 803 S.W.2d at 716. We accept that the Collin County district attorney has the duty to prosecute the pleas of the State in criminal cases, which includes utilizing his discretion in preparing cases for trial. *See Meshell,* 739 S.W.2d at 254. The legislature retains the right, however, to establish new rights for a defendant under its general plenary power so long as it does not unduly interfere with a prosecutor's exclusive function. *See Jones,* 803 S.W.2d at 716.

In comparing article 32.01 to the Speedy Trial Act, we find that both provide a time limit in which the State must be prepared to act and exceptions that may toll the requisite time period. The Speedy Trial Act included numerous exceptions that would toll the time in which the State had to be ready for trial, such as the defendant's absence from the State, unavailability of material evidence, and any period justified by exceptional circumstances. *See* TEX.CODE CRIM. PROC. ANN. art. 32A.02, § 4 (Vernon 1989). Article 32.01 provides for an exception when the State shows good cause for the delay. *See* TEX. CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989).

The articles target different proceedings, however. Article 32.01 sets a time limit in which the State must return an indictment whereas the Speedy Trial Act sets a time limit in which the State must announce ready for trial. In addition, the time frame is different. Article 32.01 gives the prosecutor in Collin County between six and twelve months to obtain an indictment whereas the Speedy Trial Act provided only 180 days from indictment or arrest for the prosecutor to be ready for trial.

Both articles contain a remedy in which further prosecution is barred. The Speedy Trial Act and article 28.061 were enacted together; however, article 32.01 existed at least thirty years without the enforcement mechanism of article 28.061. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 441 (current version at TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989)).

In comparing article 32.01 with article 17.151, we find that both articles create rights. Article 32.01 creates a right in the accused to be released from prison or from bail if not indicted within a certain time, whereas article 17.151 provides a right for a defendant to be released from prison or to have his bail reduced if the State is not prepared to proceed with trial within a certain time. Article 32.01 includes a good cause exception; article 17.151 does not include any exceptions. If the State violates article 17.151, the accused must be released from jail or bail must be reduced, but the State may proceed with prosecution. If the State violates article 32.01, the accused must be discharged from incarceration or bail and all charges dismissed.

We conclude that article 32.01 is most analogous to article 17.151. By enacting article 32.01, the legislature created a right in the accused to be free from the "incidental puni-

tive effect" of incarceration or being held to bail if the State is unable to obtain an indictment within a specified period of time. *See Jones,* 803 S.W.2d at 716. Article 32.01 does not unduly burden the State as its only consequence is a dismissal of the prosecution and the discharge from bail. *See* TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989). Without the enforcement mechanism of article 28.061, article 32.01 does not impermissibly infringe on prosecutorial discretion in contravention of the separation of powers doctrine.

### Article 28.061   Analysis

■ The question remains, however, whether the legislature unduly interfered with the State's prosecutorial functions by amending article 28.061 in 1987 to bar further prosecution for article 32.01 violations. Article 32.01 was effective January 1, 1966. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 441 (current version at TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989)). Not until 1987 did the legislature decide to amend article 28.061 so that further prosecution would be barred for article 32.01 violations. *See* Act of May 22, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885, 1885 (current version at TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989)). Because the legislature enacted the two articles separately, unlike the Speedy Trial Act and article 28.061, we have no qualms in finding article 32.01 constitutional and article 28.061 unconstitutional.

We begin by examining the legislative intent behind article 28.061's amendment. In 1987, House Bill 23 was introduced. It proposed changes to articles 28.061, 32.01, and 32A.02. In the bill's author's opinion, these three articles constituted the Texas Speedy Trial Act. *See* Elizabeth Klaas, *Dismissal for Pre–Indictment Delay under Articles 32.01 and 28.061 of the Texas Code of Criminal Procedure,* 23 AM. J.CRIM. L. 353, 358 (1996); *see also* Speedy Trial of Criminal Cases Act, 65th Leg., R.S., ch. 787, 1977 Tex. Gen. Laws 1970. The House discussions centered on the proposed changes for article 32A.02. Klaas, 23 AM. J.CRIM. L. at 358. There was no discussion concerning article 28.061. *Id.*

House Bill 23 was heard before the Senate Criminal Justice Committee. *See* S.J. of TEX., 70th Leg., R.S., 3123 (1987). In the Senate sponsor's opinion, the current system allowed too many dismissals and hindered prosecutors with arbitrary and unrealistic time limits. *See* Klaas, 23 AM. J.CRIM. L. at 359. There were only two other comments concerning House Bill 23. One person stated there needed to be a mechanism to force the State to seek an indictment. *Id.* at 360. Otherwise, a defendant was "unable to force his case to trial and establish his innocence." *Id.*

On May 19, 1987, the language of article 28.061 as it exists today was inserted and the changes to article 32.01 were omitted. *Id.* at 360–61. The Senate approved the revised bill on May 22, 1987. One senator commented that "[t]he purpose of the Speedy Trial Act is to ensure that they will prosecute criminals or those cases will be dismissed. And it puts the burden on a district attorney to really get after his cases. . . . [L]ots of cases [are] sitting on the courts' docket." *Id.* at 361. Thus, it appears from the legislative history that article 28.061 was amended with little or no discussion save that of a desire on the legislature's part to force prosecutors to clear the courts' dockets. Unfortunately, it is this type of control by one branch of the government over another branch of the government that may violate the separation of powers doctrine.

Therefore, we look to the effect article 28.061 has upon the separation of powers doctrine and the purpose, if any, behind the amendment. As discussed previously, article 32.01's purpose is to release the accused from the punitive effects of incarceration or bail. This purpose is achieved by a dismissal of the prosecution and a discharge from bail; barring prosecution is not necessary. Article 28.061's bar shifts the focus from releasing the accused from the punitive effects of incarceration or bail to the State's ability to obtain an indictment within a specific time period. The time period is based on terms of court where the accused is charged and varies throughout the state from two months to six months. *See* TEX. GOV'T CODE ANN. §§ 24.101–24.507, 74.096 (Vernon 1988).

This discrepancy creates wide variances in the time allowed prosecuting attorneys to obtain an indictment. As such, the legislature infringes upon a prosecutor's right to decide if and when sufficient evidence is available to present to a grand jury by barring further prosecution for any offense if the grand jury fails to indict within the time specified in article 32.01.

Although the harshness of article 28.061 is ameliorated by the good cause provision in article 32.01, it does not save the bar from unduly interfering with the prosecutor's discretion. As in this case, the grand jury may decline to indict the accused until more evidence is presented in support of the charges. Although the prosecutor has considerable control over the presentation of cases to the grand jury, the grand jury determines when to return an indictment. The prosecutor cannot guarantee that the grand jury will act within the time required under article 32.01. Any failure of the prosecuting attorney to satisfy the grand jury in a timely fashion may bar further prosecution. The finality of this type of remedy deprives the State of its exclusive prosecutorial discretion in preparing a case for the grand jury. *See Meshell,* 739 S.W.2d at 257.

The State will not always be able to meet the good cause exception no matter how broadly it is read and whether it includes the *Barker* factors or otherwise. It is the final bar to further prosecution that violates the separation of powers doctrine. Although the legislature may create rights and rules in which to enforce a defendant's rights, it may not unduly interfere with another branch of government. In enacting article 28.061, the legislature wanted to force prosecutors to get their cases through the court system. No thought was given to the purpose of a speedy indictment or the appropriateness of the remedy. We conclude that article 28.061 violates the separation of powers doctrine and is therefore unconstitutional. We overrule the State's second point of error as it pertains to article 32.01 and sustain the State's second point of error as it pertains to article 28.061.

Because we find article 28.061 unconstitutional, we must decide whether the fact that the grand jury returned both indictments against appellee before he obtained a ruling on his amended writ of habeas corpus made appellee's article 32.01 complaint moot.

### III.

█ The State argues that because the grand jury returned the indictments against appellee before appellee obtained a ruling on his writ of habeas corpus, the article 32.01 complaint became moot and the court erred in discharging the prosecution. The State primarily relies on *Wilkinson v. State,* 899 S.W.2d 20, 21 (Tex.App.—San Antonio 1995, pet. ref'd), in which the court held that if an indictment issues before the trial court rules on a 32.01 motion, the motion is moot. Thus, the court concluded the defendant had to seek and obtain a ruling on his article 32.01 motion before the grand jury returned an indictment. *Id.* at 21–22.

As stated previously, the legislature amended article 28.061 in 1987 to make it applicable to article 32.01.[8] Prior to this amendment, a dismissal under article 32.01 did not bar further prosecution. *See Ex parte Knight,* 904 S.W.2d 722, 725 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). As such, nothing prevented the State from reinitiating charges after the trial court dismissed the indictment pursuant to article 32.01. In essence, after the State had enough evidence to constitute probable cause and the grand jury returned an indictment, the State would recharge the accused. Because of the temporary nature of the dismissal, many courts held that an indictment rendered an article 32.01 complaint moot. *See Tatum v. State,* 505 S.W.2d 548, 550 (Tex. Crim.App.1974); *Ex parte Johnson,* 142 Tex. Crim. 483, 154 S.W.2d 854, 856 (1941); *Garay v. State,* 683 S.W.2d 21, 22 (Tex.App.—Waco 1984, pet. ref'd).·

*Wilkinson* is the only decision after the 1987 amendments holding a 32.01 complaint moot if not ruled upon before the grand jury returns an indictment. The San Antonio Court recently reexamined *Wilkinson* and

---

8. *See* Act of May 20, 1977, 65th Leg., R.S., ch. 787, § 4, 1977 Tex. Gen. Laws 1970, 1972, *amended by* Act of May 22, 1987, 70th Leg., R.S., ch. 383, §§ 1, 4, 1987 Tex. Gen. Laws 1885, 1885, 1887 (affecting offenses committed on or after September 1, 1987).

repudiated the mootness language. The court agreed with the Houston Courts of Appeals and held that a defendant does not have to obtain a ruling on an article 32.01 motion before the grand jury returns an indictment. *See Ex parte Lawson,* No. 04–96–00265–CR, slip op. at 7–9, —— S.W.2d ——, —————, 1996 WL 735475 *see also Norton,* 918 S.W.2d at 27–28; *Ex parte Knight,* 904 S.W.2d at 725.

All these courts, however, either found or assumed article 28.061 was constitutional. Because article 28.061 bars further prosecution, it would not matter whether the court ruled on the accused's motion prior to or after the grand jury returned the indictment. Because this Court finds article 28.061 unconstitutional, however, we adopt the reasoning in cases decided prior to 1987 holding an article 32.01 complaint is moot if not ruled on prior to indictment.

If the State violates article 32.01 without good cause, the court must dismiss the prosecution against the accused. This dismissal serves to release the accused from jail or bond. The State is free, however, to rearrest the accused if the grand jury returns an indictment. Because the State can proceed with its case against an accused and seek an indictment after a dismissal under article 32.01, a defendant must obtain a ruling on his article 32.01 motion before the grand jury returns an indictment or the question is moot. Once the grand jury returns an indictment, there is no reason to release the defendant from jail or bond because the State can merely reinitiate proceedings.

In this case, appellee filed his application for writ of habeas corpus after the first indictment for sexual assault was returned, and he did not obtain a ruling on his 32.01 complaint until after the grand jury returned a second indictment against him for aggravated sexual assault. As such, appellee's 32.01 complaint became moot. For these reasons, we sustain the State's first point of error.

Accordingly, we reverse the court's order dismissing the indictments against appellee and remand these cases for trial.