ACCEPTED
03-14-00407-CR
5686688
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/15/2015 11:41:47 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00407-CR

---

**IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/15/2015 11:41:47 PM
JEFFREY D. KYLE
Clerk

---

JERRYL ROBINSON, Appellant

v.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 207th Judicial District Court of Comal County, Texas
Cause No. CR2013-349
Honorable Gary L. Steel, District Judge Presiding

---

## BRIEF FOR THE STATE

---

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Joshua D. Presley**
**SBN: 24088254**
**Assistant District Attorney**
**150 N. Seguin Avenue, Suite #307**
**(830) 221-1300**
**Fax (830) 608-2008**
**New Braunfels, Texas 78130**
**E-mail: preslj@co.comal.tx.us**
**Attorney for the State**

**Oral Argument Is Not Requested**

## Identity of Parties and Counsel

**Attorneys for the Appellant Nathaniel Paul Fox**

**AT TRIAL**
Michael Zamora
211 Babcock Rd.
San Antonio, TX 78201
Telephone: (210) 738-0067
Facsimile: (830) 980-2021

David M. Collins
206 E. Locust St.
San Antonio, TX 72212
Telephone: (210) 212-6700
Facsimile: (210) 249-0116

**ON APPEAL**
Marilee H. Brown
391 Landa Street
New Braunfels, Texas 78130
Telephone: (830) 629-6955
Facsimile: (830) 629-2559
Email: marilee@hazelbrownlaw.com

**Attorneys for the Appellee, The State of Texas**

**AT TRIAL**
Abigail Whitaker
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: whitaa@co.comal.tx.us

Christine Rankin
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas  78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: rankic@co.comal.tx.us


**ON APPEAL**
Joshua D. Presley
SBN# 24088254
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: preslj@co.comal.tx.us

# Table of Contents

Index of Authorities .................................................................................................v

Statement of the Case.......................................................................................... ix

Issues Presented .....................................................................................................2

Statement of Facts.................................................................................................3

Summary of the Argument.....................................................................................6

    1. **Appellant's Speedy Indictment Claim Fails Under Texas Case Law**...8

    A. Appellant Failed to Preserve Any Error by Not Correctly Filing His Application, Urging a Hearing, Obtaining a Ruling and Appealing Any Adverse Ruling Pretrial .................................................................................8

    B. Even if Appellant had Preserved the Issue, His Claim Was Moot When an Indictment Was Returned Before Any Hearing on His Application ...........................................................................................11

    C. Even if a Full Barker Analysis Was Conducted, the Trial Court Would Not Have Erred in Finding No Violation .........................................14

    2. **Appellant Cannot Show Ineffective Assistance of Counsel on Appeal** ...........................................................................................................25

        *Ineffective Assistance of Counsel Standard of Review on Appeal* ......25

    A. Appellant Cannot Show Ineffective Assistance from Mr. Zamora .........29

    B. Mr. Collins Was Not Ineffective for Failing to Dispute Credible Evidence, Particularly Where Conviction for the "Lesser" Offense Would Still Subject Appellant to the Same Range of Punishment ...............30

    C. Mr. Collins Was Not Ineffective for Obtaining a Directed Verdict on a Lesser-Included Offense When the "Lesser" Offense Had the Same Range of Punishment..............................................................................31

D. Because Appellant's Suggested Lines of Inquiry Would Have Hurt Him at Trial, Mr. Collins Was Not Ineffective for Failing to Further Cross-Examine the Witness ..................................................................34

E. Appellant Argues Outside the Record, and the Only Evidence in the Record Indicates Mr. Collins Was Not Ineffective for Failing to Investigate ...........................................................................................37

3. **The Evidence Was Legally Sufficient to Establish That Appellant Was a Party to the Theft and to Establish Value** ....................................38

Prayer ................................................................................................................47

Certificate of Service .......................................................................................48

Certificate of Compliance ................................................................................49

iv

# Index of Authorities

## Statutes, Rules & Secondary Sources

Tex. Crim. Proc. Code Ann. art. 12.01
(West, Westlaw through 2013 Sess.) ....................................................................13

Tex. Code Crim. Proc. Ann. art. 15.14
(West, Westlaw through 2013 Sess.) ..............................................................11, 13

Tex. Code Crim. Proc. Ann. art. 21.09
(West, Westlaw through 2013 Sess.) ....................................................................45

42 Tex. Prac., Criminal Practice And
Procedure § 28:52 (3d ed.)...................................................................................11

## Cases

*Bara v. Major Funding Corp. Liquidating
Trust*, 876 S.W.2d 469 (Tex. App.—Austin
1994), *writ denied* (Nov. 3, 1994) .......................................................................23

*Barker v. Wingo*, 407 U.S. 514 (1972) ............................................................9, 18

*Bollinger v. State*, 224 S.W.3d 768 (Tex. App.
—Eastland 2007, pet. ref'd)..................................................................................11

*Brown v. State*, 163 S.W.3d 818 (Tex. App.—
Dallas 2005, pet. ref'd) .........................................................................................14

*Brown v. State,* 866 S.W.2d 675 (Tex. App.—
Houston [1st Dist.] 1993, pet. ref'd)......................................................................37

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim.
App. 2011) .............................................................................................................45

*Cannon v. State*, 668 S.W.2d 401 (Tex. Crim. App. 1984)..................................................................27

*Cantu v. State*, 253 S.W.3d 273 (Tex. Crim. App. 2008)..................................................................16

*Carmona v. State*, 880 S.W.2d 227 (Tex. App. —Austin 1994), *vacated on other grounds,* 941 S.W.2d 949 (Tex. Crim. App. 1997). ....................................................................36

*Coble v. State*, 501 S.W.2d 344 (Tex. Crim. App. 1973) ....................................................................35

*Cothern v. State*, 02-13-00466-CR, 2015 WL 2169248 (Tex. App.—Fort Worth May 7, 2015, no. pet. h.) (not designated for publication) .................................................45

*Cowart v. State*, 03-99-00518-CR, 2000 WL 1227781 (Tex. App.—Austin Aug. 31, 2000, no pet.) (not designated for publication) .....................................................8

*Delrio v. State*, 840 S.W.2d 443 (Tex. Crim. App. 1992) ....................................................................27

*Dragoo v. State*, 96 S.W.3d 308 (Tex. Crim. App. 2003) .............................................. 15, 16, 18, 19, 22, 24, 25

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007)..................................................................32

*Ervin v. State,* 331 S.W.3d 49 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd)..................................................38

*Ex parte Countryman*, 226 S.W.3d 435 (Tex. Crim. App. 2007)............................................12, 13, 14, 15, 29

*Ex parte Martin*, 6 S.W.3d 524 (Tex. Crim. App. 1999)..................................................................11

*Ex parte Preston*, 833 S.W.2d 515 (Tex. Crim. App. 1992)................................................................37

*Ex parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997)................................................................28

*Felters v. State*, 147 S.W.3d 488 (Tex. App.— Fort Worth 2004, pet. ref'd)..........................40, 41, 42, 43

*Gonzales v. State*, 435 S.W.3d 801 (Tex. Crim. App. 2014) ................................................................22

*Goodspeed v. State*, 187 S.W.3d 390 (Tex. Crim. App. 2005) ................................................................28

*Green v. State*, 14-08-00075-CR, 2009 WL 136917 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009, no pet.) (mem. op., not designated for publication) ................................................................24

*Griffis v. State*, 441 S.W.3d 599 (Tex. App.— San Antonio 2014) ................................................................29

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004) ................................................................40

*Haynes v. State*, 273 S.W.3d 183 (Tex. Crim. App. 2008)................................................................32

*Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013), *cert. denied,* 134 S. Ct. 934 (2014)................8, 17

*Hernandez v. State*, 127 S.W.3d 768 (Tex. Crim. App. 2004)................................................................23

*Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998)................................................................28

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................................................39

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App.—
Houston [1st Dist.] 2011, pet. ref'd) ............................................................38, 39, 46

*Lehman v. State,* 792 S.W.2d 82 (Tex. Crim.
App. 1990) ........................................................................................................45

*Lopez v. State*, 343 S.W.3d 137 (Tex. Crim.
App. 2011)...........................................................................................................25

*Mallett v. State,* 65 S.W.3d 59 (Tex. Crim.
App. 2001).............................................................................................................27

*Margraves v. State*, 34 S.W.3d 912 (Tex.
Crim. App. 2000), *abrogated on other grounds
by Laster v. State*, 275 S.W.3d 512 (Tex. Crim.
App. 2009). ...........................................................................................................40

*Marin v. State,* 851 S.W.2d 275 (Tex. Cr. App.
1993) ...................................................................................................................10

*Mata v. State*, 226 S.W.3d 425 (Tex. Crim. App.
2007) ...............................................................................................26, 27, 28, 38

*McMann v. Richardson*, 397 U.S. 759 (1970) ......................................................25

*Menefield v. State,* 363 S.W.3d 591 (Tex. Crim.
App. 2012)........................................................................................................... 26

*Miniel v. State*, 831 S.W.2d 310 (Tex. Crim. App.
1992) ................................................................................................................... 36

*Owens v. State*, 96 S.W.3d 668 (Tex. App.—Austin
2003, no pet.) ..................................................................................................... 11

*Patrick v. State*, 906 S.W.2d 481 (Tex. Crim. App.
1995) ................................................................................................................... 27

*Perez v. State,* 310 S.W.3d 890 (Tex. Crim. App.
2010) ...................................................................................................................26

*Phipps v. State,* 630 S.W.2d 942 (Tex. Crim. App. 1982) ................................................................................19

*Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999) ................................................................................32

*Roberson v. State*, (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)................................................................40

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006)................................................................................37

*Romero v. State*, 13-12-00188-CR, 2013 WL 7964212, at \*2 (Tex. App.—Corpus Christi Oct. 24, 2013, pet. ref'd) (mem. op., not designated for publication) ...............................................14, 21

*Sanders v. State*, 675 S.W.2d 622 (Tex. App.—Fort Worth 1984, no pet.) .......................................................45

*Schultz v. State*, 255 S.W.3d 153 (Tex. App.—San Antonio 2008, no pet.). ......................................................34

*Smith v. Gohmert*, 962 S.W.2d 590 (Tex. Crim. App. 1998)..................................................................................9

*Starks v. State*, 266 S.W.3d 605 (Tex. App.—El Paso 2008, no pet.) .........................................................20, 21

*State v. Condran*, 951 S.W.2d 178 (Tex. App.— Dallas 1997, pet. granted), *petition dismissed as improvidently granted*, 977 S.W.2d 144) ...............................................14

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................25, 26, 27, 38

*Thompson v. State,* 9 S.W.3d 808 (Tex. Crim. App. 1999) ................................................................ 26, 28

*Tolbert v. State*, 306 S.W.3d 776 (Tex. Crim. App. 2010) ................................................................ 32

*Tong v. State,* 25 S.W.3d 707 (Tex. Crim. App. 2000) ...............................................................................27

*Villani v. State*, 116 S.W.3d 297 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd) ................................................44

*Whitehead v. State,* 130 S.W.3d 866 (Tex. Crim. App. 2004)..............................................................................37

*Wiede v. State*, 214 S.W.3d 17 (Tex. Crim. App. 2007) ...............................................................................17

*Wood v. State*, 4 S.W.3d 85 (Tex. App.—Fort Worth 1999, pet. ref'd)...............................................................32, 33

*Zamorano v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002) ...........................................................................14, 15, 21

x

## Statement of the Case

Appellant helped steal a box of cigarettes from a New Braunfels CVS Pharmacy on November 8, 2011 (*see* I C.R. at 10, 101). He was arrested just over a week later on November 17, 2011 (I Supp. C.R. at 4). On February 27, 2012, Appellant filed a 90-day writ (*id.* at 6). He was released on a personal recognizance bond on March 8, 2012; the bond included the condition to not "commit any offense against the laws of the State of Texas" (*id.* at 17-18).

On December 17, 2012, Appellant was arrested in Bexar County on another theft charge (*id.* at 13). The Honorable Dib Waldrip issued a capias for Appellant's arrest and set his bond at $10,000 (*id.*). On February 22, 2013, Appellant mailed a letter to the Comal County District Clerk in which he stated that he was incarcerated in Bexar County and had been sentenced to six months in state jail on another offense (*id.* at 20). He anticipated being shipped off to begin serving his sentence within 21 to 30 days, and indicated he would be willing to plead guilty to a state jail felony in Comal County to "clear up loose ends" (*id.*).

On May 10, 2013, Comal County took custody of Appellant (*id.* at 19). He received his Magistrate's warning on May 11, and he indicated he did not want to request a court-appointed attorney (*id.* at 21). One month later on June 10, 2013, Appellant filed a 180-day speedy-indictment writ requesting discharge and dismissal of his case with prejudice (*id.* at 23, 26). Before any hearing on the writ

1

was held, an indictment was returned on August 14, 2013 (I C.R. at 10). Appellant did not request a hearing on his writ or otherwise urge it before the trial court immediately before his trial commenced (*see* III R.R. at 7-14). Following a trial to a jury, Appellant was convicted of the offense of Theft > $1,500 < $20,000 on or about June 10, 2014 (I C.R. at 101). The jury assessed his punishment at 15 years in the institutional division of TDCJ (*id.*). Appellant timely filed his notice of appeal (*id.* at 94).

## Issues Presented

1. Where Appellant is incarcerated on another charge, acquiesces in the delay and eventually requests that any trial be barred instead of asking for a speedy trial, are his speedy-trial rights violated?

2. Can Appellant demonstrate ineffective assistance of counsel on appeal where counsel's strategies and motivations are not developed on the record and the alternative strategies argued on appeal would at best lead to a conviction for a similar offense with an equal range of punishment?

3. Can the evidence in Appellant's case be legally insufficient to support his conviction when – in viewing the evidence in the light most favorable to the verdict – it cannot be said that *no* reasonable juror would have found the evidence sufficient to prove Appellant's guilt beyond a reasonable doubt?

2

In a video interview, Appellant confessed that he and Frank Parramore routinely stole merchandise from local businesses before fencing it in San Antonio (State's Ex. 11, Part 3 at 15:15:45; Part 4 at 15:28:55, 15:29:20, 15:30:45; Part 5 at 15:31:30). On November 8, 2011, Appellant and Parramore went to steal razors from a CVS pharmacy (III R.R. at 36; State's Ex. 11, Part 1 at 15:10:00; Part 3 at 15:14:30). Between 7:30 and 8:00 p.m., Appellant and Parramore walked through the entrance of the store, talking and laughing with each other (III R.R. at 37, 44-46; State's Ex. 5, Part 1).

Delores Rodriguez was working the 3:00 to 11:00 p.m. shift as the front-end clerk that night (III R.R. at 36). She had to take care of customers, work the register, assist people in the photo lab and check merchandise deliveries in (*id*. at 36, 38). The pharmacy was busy that evening (*id*. at 44). As she worked with a box of cigarettes behind the counter, Ms. Rodriguez observed Appellant and Parramore enter the store together (*id*. at 43, 45-47).

Appellant planned to distract Rodriguez while Parramore tried to steal merchandise (State's Ex. 11, Part 3 at 15:14:35). Appellant asked for help in the photo lab, drawing Ms. Rodriguez away from the counter (III R.R. at 45; State's Ex. 5, Part 3). While Appellant kept Rodriguez occupied, Parramore slipped behind the counter and grabbed a box full of cigarettes (State's Ex. 5, Part 3; Part

3

4; III R.R. at 55). When Parramore ran back through the counter door, Rodriguez heard it hit the wall and saw him with merchandise (III R.R. at 51, 54). As he ran out the front door, she chased after him (State's Ex. 5, Part 4). Appellant followed them outside (*id.*).

Ms. Rodriguez caught up with Parramore near the highway (III R.R. at 54). She yelled at him to give her back the merchandise (*id.* at 55). Parramore then set the box down, turned around and looked at her as if "he was going to fight" (*id.*). Fearing he was about to attack her, Rodriguez ran back to the store (*id.*). Parramore picked up the box and left (*id.* at 55).

On her way back to the store, Ms. Rodriguez crossed paths with Appellant (*id.* at 75). Rodriguez was familiar with thieves working in tandem; she believed Appellant was working in concert with Parramore to distract her (*id.* at 83-84). Appellant claimed he did not know what was happening (*id.* at 75). When Rodriguez said she was calling the police, Appellant "took off" (*id.* at 75-76). In his rush to get away, Appellant left his wallet and his cell phone in the pharmacy (*id.* at 76-77; State's Ex. 11, Part 4 at 15:17:20). Appellant never tried to retrieve them – either from the store or the police – before trial (III R.R. at 77, 103).

Rodriguez had not yet taken any of the cigarette cartons out of the stolen box (*id.* at 52). To provide police with an accurate dollar amount, she completed her inventory that night and checked it against the invoice (*id.* at 65). The invoice was

created at the warehouse, where the merchandise had been counted prior to shipping (*id*. at 53). Ms. Rodriguez had worked at the store for years (*id*. at 35). She knew the invoices were accurate, and trusted them to give her the correct count of the missing items (*id*. at 54). After completing her inventory, Rodriguez printed out a receipt reflecting the stolen items and their value: 36 cartons had been stolen, totaling $1,913.44 before tax (*id*. at 66).[1]

Appellant later told Detective Wahrmund that he was surprised Parrarmore had stolen razors instead of cigarettes, and that he was mad that Parramore had not given him a cut of the proceeds (*id*. at 119-20; State's Ex. 11, Part 1 at 15:10:30; Part 3 at 15:15:23). Appellant was indicted for Theft > $1,500 < $20,000 and for Theft with Two or More Convictions for the Same Offense (I C.R. at 10). After Appellant stipulated to the two prior convictions, both counts were second-degree felonies with the same punishment range (*id*.; I Supp. C.R. at 5).

---

[1] One such receipt was entered into evidence in the instant cause as State's Exhibit 6 (V R.R. at 17).

## Summary of the Argument

In his first point of error, Appellant apparently contends that the trial court erred in failing to release him after he attempted to file a speedy trial writ two months before he was indicted. Brief for Appellant at 19, 23-24. However, Appellant failed to preserve this point of error because he never urged his writ, obtained a hearing or ruling, or appealed any denial of his writ pretrial. Furthermore, caselaw holds that the return of an indictment renders a speedy-indictment writ moot. Finally, several factors – including Appellant's expressed desire to have no trial at all – support the finding that there was no speedy indictment violation in any event.

In his second point of error, Appellant tries to demonstrate ineffective assistance of counsel on appeal. Appellant's complaint related to pretrial habeas applications fails because he either cannot show the lack of a valid strategy or prejudice. The record is likewise not sufficiently developed to address Appellant's other claims on appeal, particularly in light of the reasonable strategies that could underlie his counsel's actions. Finally, where Appellant's remaining claims argue his counsel should have attacked the value of the property stolen, the fact that in that event the State could still have obtained a conviction on proof of a similar theft offense with the same range of punishment precludes any finding of prejudice.

6

In his final point of error, Appellant apparently challenges the legal sufficiency of the evidence to prove he was criminally responsible for the theft, the legal sufficiency of the evidence supporting value, and the legal sufficiency of the evidence with regard to the number of cigarette cartons in the box. First, a comparison of the facts in *Felters* with the facts of Appellant's case demonstrates the evidence in the instant case was significantly greater than that found sufficient in *Felters*. Additionally, there was significant and legally sufficient evidence establishing the value of the stolen cartons. Finally, although this same evidence would be sufficient to establish the *number* of cartons stolen, the number is not actually an element and would not generally constitute a material variance.

# 1. Appellant's Speedy Indictment Claim Fails Under Texas Case Law

### A. Appellant Failed to Preserve Any Error by Not Correctly Filing His Application, Urging a Hearing, Obtaining a Ruling and Appealing Any Adverse Ruling Pretrial.

The Court of Appeals noted the importance of bringing speedy-trial applications to the attention to the trial court in *Cowart v. State*:

> As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made in the trial court by a timely request, objection, or motion stating grounds for the ruling that the complaining party sought from the trial court, and the record must show that the trial court ruled on the request, objection, or motion either expressly or impliedly. *See* Tex. R. App. P. 33.1. A complaint that a defendant was not given a speedy trial must be raised in the trial court to preserve the complaint for appellate review.

03-99-00518-CR, 2000 WL 1227781, at *1 (Tex. App.—Austin Aug. 31, 2000, no pet.) (not designated for publication) (citing *Dunn v. State,* 819 S.W.2d 510, 526 (Tex. Crim. App. 1991).

The Court of Criminal Appeals subsequently held in *Henson v. State* that preservation requirements apply to speedy-trial claims. 407 S.W.3d 764, 768 (Tex. Crim. App. 2013), *cert. denied,* 134 S. Ct. 934 (2014). *Henson* emphasized the incentive a defendant has to sleep on his rights related to such claims: "[w]ithout a requirement of preservation, a defendant would have great incentive not to insist upon a speedy trial and then to argue for the first time on appeal that the prosecution should be dismissed because of delay." *Id*. at 769. The Court also

observed that preservation requirements furthered judicial efficiency; if the appellant brought his complaint to the trial court's attention first, the judge could resolve any issues before the burden and expense of a trial and appeal. *Id.* Finally, the Court observed that requiring the appellant to preserve the issue would result in a sufficient record for any potential *Barker* analysis. *Id.*[2] Two factors in particular – the reason for the delay and the prejudice to the accused – are fact-specific inquiries which need to be developed at a hearing in order for appellate courts to accurately evaluate the issue. *Id.*

In the instant case, Appellant failed to correctly file his pretrial writ, and was informed of the error by the district court clerk (I Supp. C.R. at 39). Though he was informed of the error, Appellant did not thereafter attempt to re-file a corrected application, nor did he urge a hearing or ruling on his defective application pretrial (*see generally* I C.R., I Supp. C.R., III R.R. at 7-13, *id.* at 14 (where the trial court received a negative response when it asked "[a]nything else we need to talk about?"). After Appellant was indicted, he filed no motion to dismiss the indictment pursuant to Article 27.03. *See Smith v. Gohmert*, 962

---

[2] *Barker v. Wingo* is the Supreme Court case which listed the factors to consider in evaluating speedy-trial claims, including: 1) whether delay before trial was uncommonly long; 2) whether the government or the criminal defendant is more to blame for that delay; 3) whether, in due course, the defendant asserted his right to a speedy trial; and 4) whether he suffered prejudice as the delay's result. 407 U.S. 514, 531 (1972) (where the Court found the defendant was not seriously prejudiced by five-year delay between arrest and trial and he did not want a speedy trial, his right to a speedy trial was not violated). These factors are discussed in more detail *infra* (at 15).

9

S.W.2d 590, 592 (Tex. Crim. App. 1998) (an appellant could appeal the erroneous denial of such a motion post-trial).

Appellant's failure to urge the dismissal of the indictment is particularly glaring in light of the fact that the return of an indictment before a hearing will often render speedy-indictment claims moot. *See infra* at 11-12. Appellant committed his theft offense on or about November 8, 2011, and his indictment was returned on August 14, 2013. I C.R. at 10. Because any dismissal would be without prejudice and the three-year statute of limitations had not expired, even after any potential discharge, Appellant would simply have been re-indicted and rearrested. *See infra* at 11-12. In light of the foregoing, the trial court – if it was aware of the application at all – may have reasonably believed Appellant had decided not to pursue the issue further after consulting with his counsel.

As in *Henson*, Appellant may not raise the issue on appeal after failing to urge his claim at trial, failing to request a hearing to develop the *Barker* factors and failing to obtain a ruling. *Henson*, 407 S.W.3d 764, 768. "[u]nless a litigant ... moves to avail himself of a procedural benefit ... no such benefit inures.... Because the judge has no independent duty in this regard, his failure ... isn't error about which complaint might later be made on appeal." *Id*. at 767 (citing *Marin v. State,* 851 S.W.2d 275, 278 (Tex. Cr. App. 1993)). Had Appellant complied with the preservation requirements, the trial court could have granted "the appropriate

10

remedy before the expense and other burdens of a trial (and an appeal)" were incurred. *Id.* at 769; *cf. Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.) (failure to obtain adverse ruling to jury argument objections waived error); *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd) (failure to obtain a ruling on a motion to suppress waived any error). Furthermore, because the only relief available would have been pretrial liberty, Appellant cannot receive relief on post-conviction appeal.[3] Appellant has failed to preserve his first point of error for review, and the Court should overrule it.

## B. Even if Appellant had Preserved the Issue, His Claim Was Moot When an Indictment Was Returned Before Any Hearing on His Application.

Under former articles 32.01 and 28.061, dismissal for delay was with prejudice. *Ex parte Martin*, 6 S.W.3d 524, 529 (Tex. Crim. App. 1999). Now, however, an appellant may be rearrested following such a dismissal when an indictment is returned. Tex. Code Crim. Proc. Ann. art. 15.14 (West, Westlaw

---

[3] The Texas Practice Series observes that for speedy-indictment claims under article 32.01:

> Habeas corpus was undoubtedly the most appropriate vehicle during the 1987-1997 period.
>
> Under the statutory scheme as amended in 1997, habeas corpus is also clearly available. Since the only relief is essentially pretrial liberty, appeal from any conviction that followed could not provide that relief.

42 Tex. Prac., Criminal Practice And Procedure § 28:52 (3d ed.).

11

through 2013 Sess.); *Ex parte Countryman*, 226 S.W.3d 435, 438 (Tex. Crim. App. 2007).

In *Ex parte Countryman*, the appellant filed an application to have his case dismissed before the indictment was returned. *Id*. at 436. The trial court denied the application, and the appellant appealed. *Id*. The court of appeals relied on *Martin* and reversed the trial court. *Id*. The Court of Criminal Appeals distinguished *Martin*, however; among other factors, it observed that prosecution was barred in *Martin* unless the State showed good cause for the delay. *Id*. at 438. The Court considered the totality of the circumstances, including the fact that the dismissal would be without prejudice, the appellant was not eligible for release on bond, an indictment was returned immediately after the application was filed, and the appellant could have simply been rearrested under Article 15.14. *Id*. at 438-39. In stark contrast to *Martin*, where a lack of good cause would result in a dismissal with prejudice, *Ex parte Countryman* observed that under the current statutes "it does not matter whether the State shows good cause for the delay because even a determination that the State did not show good cause would not provide a remedy to Appellant." *Id.* at 439. The Court of Criminal Appeals found the trial court had not erred in holding the claim was moot. *Id*.

In the instant case, even if Appellant had preserved his claim, *Ex parte Countryman* would preclude relief. The dismissal in the instant cause would

likewise be without prejudice. *See id*. at 438. Whereas in *Ex parte Countryman* the appellant was ineligible for release on bond, here, Appellant was free on a personal recognizance bond until he was arrested in Bexar County on December 17, 2012 (I Supp. C.R. at 13). Furthermore, Appellant admitted in his correspondence with the Comal District Clerk that he was "presently incarcerated in the Bexar County Jail" on February 22, 2013, had been sentenced to six months in state jail, and might leave for the jail "within 21 to 30 days" (I Supp. C.R. at 20). Even if Appellant had been "released" from the Comal charge, practically, he would still have been confined in state jail on the Bexar County offense. Whereas the indictment in *Ex parte Countryman* was returned a little more than a week after the application was filed (226 S.W.3d at 436), in the instant cause, the indictment was returned just over two months after the application was filed – presumably while Appellant was still serving time on his Bexar County offense (I C.R. at 10). Finally, just as in *Ex parte Countryman*, Appellant could simply have been re-indicted and rearrested in the event he was "released" from the Comal charge. *See* Tex. Code Crim. Proc. Ann. Art. 15.14; Tex. Crim. Proc. Code Ann. art. 12.01 (West, Westlaw through 2013 Sess.) (statute of limitations for theft is five years); I C.R. at 10 (theft was committed on or about November 8, 2011).

Even assuming arguendo the Appellant obtained an adverse ruling from the trial court, it would not have erred in finding his claim moot in such circumstances.

*See Ex parte Countrymen*, 226 S.W.3d at 439 (noting the futility of dismissing an indictment when it merely forced the State to waste resources and grand jury time by reindicting the appellant)*; see also State v. Condran*, 951 S.W.2d 178, 192 (Tex. App.—Dallas 1997, pet. granted), *petition dismissed as improvidently granted*, 977 S.W.2d 144) (holding article 32.01 complaint is moot if not ruled on prior to indictment). Accordingly, the Court should overrule Appellant's first point of error.

### C. Even if a Full Barker Analysis Was Conducted, the Trial Court Would Not Have Erred in Finding No Violation.

Although *Ex parte Countryman* would be the proper analysis if Appellant had preserved his speedy-indictment claim, notably, even under a full *Barker v. Wingo* analysis, his claim would fail. Because Appellant only complains of pre-indictment delay (Brief for Appellant at 19), the Court does not need to consider post-indictment delay, if any. *See Romero v. State*, 13-12-00188-CR, 2013 WL 7964212, at *2 (Tex. App.—Corpus Christi Oct. 24, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Brown v. State*, 163 S.W.3d 818, 822 (Tex. App.—Dallas 2005, pet. ref'd)).

Courts will employ a bifurcated standard of review for speedy-trial claims, including "an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648

14

(Tex. Crim. App. 2002). Where an appellant loses on his speedy-trial claim, reviewing courts will presume the trial court resolved any disputed facts in favor of the State, and will defer to any implied findings supported by the record. *Id*. Courts must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). The *Barker* factors to consider include:

> 1) "whether delay before trial was uncommonly long;"
>
> 2) "whether the government or the criminal defendant is more to blame for that delay;"
>
> 3) "whether, in due course, the defendant asserted his right to a speedy trial;" and
>
> 4) "whether he suffered prejudice as the delay's result."

*Zamorano v. State*, 84 S.W.3d at 648 (citing *Barker v. Wingo*, 407 U.S. at 530).

At the outset of the analysis, it is important to note that Appellant requested relief which was not technically available. In his application, Appellant included the following prayer for relief:

> WHEREFORE, PREMISES CONSIDERED, Petitioner prays that a Writ of Habeas Corpus Issues and have Petitioner brought before this Court instanter to end the illegal confinement and be Discharged for Delay *barring further prosecution*.

(I Supp. C.R. at 26) (emphasis added); *but see Ex parte Countryman*, 226 S.W.3d at 439 (dismissal no longer bars prosecution). As noted in *Romero*, "[f]iling for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim

15

because it shows a desire to have no trial instead of a speedy one." 2013 WL 7964212, at *3 (citing *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008)). Accordingly, Appellant's claim is weakened by his *explicit request* to bar any trial. Additionally, because Appellant only asked for relief which was not available, the trial court would not have erred in denying his application on this ground.

The first Barker factor – the length of the delay – is measured from the time the defendant is arrested or formally accused. *Dragoo v. State*, 96 S.W.3d at 313. Courts will generally presume delays approaching one year to be sufficient to trigger the Barker enquiry. *Id.* (finding the three-and-a-half-year delay sufficient). In the instant case, the offense was alleged to have occurred on or about November 8, 2011, though Appellant was not arrested until November 17, 2011 (I C.R. at 10; I Supp. C.R. at 4). The indictment was returned on August 14, 2013, less than one year and nine months later (*id.*). Therefore, for the purposes of this argument, the State will presume the *Barker* enquiry was triggered.

The next factor to consider is the reason for the delay. Where the State offers the trial court no reason for the delay, this factor weighs in favor of finding a violation, though "this factor does not weigh *heavily* in favor of such a finding." *Dragoo*, 96 S.W.3d at 314 (emphasis in original). Notably, however, *Dragoo* involved a *hearing* where the State failed to offer any explanation. *Id.* at 312.

16

Appellant in the instant case failed to ask for a hearing or obtain findings (III R.R. at 14). As *Henson* observed, the preservation requirements should apply to speedy-trial claims to ensure an adequately developed record for fact-specific *Barker* inquiries including "the reason for the delay and the prejudice to the accused." 407 S.W.3d at 769.

In the instant case, as noted *supra*, Appellant was presumably still serving his state jail sentence on the Bexar County offense at the time of the indictment (I Supp. C.R. at 20). *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (absent findings, a reviewing court must "view the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings of fact that support its ruling as long as those findings are supported by the record."). Furthermore, Appellant did not request a "speedy indictment" until June 10, 2013 – almost one year and seven months after his arrest (I Supp. C.R. at 23; *id*. at 4). In such circumstances, the trial court would not have erred in finding the indictment – filed well within the five-year statute of limitations – was not unreasonably delayed.

Because Appellant did not request a hearing or findings, and because – viewing the evidence in the light most favorable to the trial court's "ruling" – implicit findings drawn from the record could support a finding of reasonable delay, factor two should weigh against Appellant's claim. In any event,

Appellant's failure to develop the record at a hearing should not be held against the State.

When dealing with factor three – the defendant's assertion of his right – courts have noted that "failure to assert the right … make[s] it difficult for a defendant to prove he was denied a speedy trial." *Barker*, 407 U.S. at 532. "This is so because a defendant's lack of a timely demand for a speedy trial 'indicates strongly that he did not really want a speedy trial.'" *Dragoo*, 96 S.W.3d at 314. *Dragoo* found it highly significant that the appellant in that case waited three-and-a-half years – until just before trial – to assert his right. *Id*. Because the Court viewed this as a strong indication that the appellant did not want a speedy trial, this factor weighed "very heavily against a finding of the speedy trial right." *Id*. at 315.

In the instant case, Appellant waited almost one year and seven months to file his speedy-indictment writ, and he was indicted two months later (I Supp. C.R. at 23; *id*. at 4; I C.R. at 10). Under *Dragoo*, this in itself is sufficient to be considered a strong indication Appellant did not want a speedy trial. *See* 96 S.W.3d at 314. However, Appellant further explicitly requested that any prosecution related to his offense be completely barred (I Supp. C.R. at 26). Where this factor in *Dragoo* was found to weigh "very heavily" against that defendant, in light of the express statement in the instant case that Appellant did not want a speedy trial, this factor should weigh even more strongly against his claim. *See* 96

18

S.W.3d at 315; *see also Phipps v. State,* 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (where a defendant demonstrated no prejudice by a four-year delay between arrest and trial and he waited until one month before trial to assert his right to a speedy trial, his right to speedy trial was not violated).

The fourth factor addresses prejudice to the defendant resulting from the delay. *Dragoo*, 96 S.W.3d at 315. *Dragoo* noted that the appellant in that case was in prison serving a life sentence for murder, and that under those circumstances the Court was mainly concerned with whether his ability to defend himself was prejudiced by the delay. *Id*. While Appellant was apparently likewise serving a state jail sentence for part of the complained-of time period, he was also free on a personal-recognizance bond from March 8, 2012 (I Supp. C.R. at 17) until he was arrested for a Bexar County offense on December 17, 2012 (I Supp. C.R. at 13). Notably, Appellant did not present any arguments regarding prejudice to the trial court (*see* I Supp. C.R. at 23-27). Appellant now presents arguments in his brief on appeal; however, *Dragoo* noted that "appellant presented no evidence to the trial court that showed his defense was prejudiced." 96 S.W.3d at 314-15 (noting the court of appeals erred in finding prejudice based on an argument the appellant never made to the trial court). Appellant has waived his arguments regarding prejudice. *See id*.

Furthermore, if the Court did not find, a further analysis of the fourth factor does not favor Appellant. "[E]ven where the delay is presumptively prejudicial, the defendant must nevertheless show that he has, in fact, been prejudiced." *Starks v. State*, 266 S.W.3d 605, 612 (Tex. App.—El Paso 2008, no pet.). While a showing of actual prejudice is not required, the defendant must make a prima facie showing of prejudice from the delay. *Id*. Notably, "the presumption of prejudice is diminished by the defendant's acquiescence in the delay." *Id*. An assessment of prejudice requires courts to look to the interests the right is designed to protect, including "(1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Id*. Of these, the third interest is the most important. *Id*.

Although Appellant claims he was incarcerated for nearly the entire time (Brief for Appellant at 28), as noted *supra*, he was actually free on a personal recognizance bond for over nine months, until he was arrested and jailed related to a Bexar County offense. Furthermore, Appellant received jail-time credit for the time periods a Comal County hold was placed on him (I C.R. at 101). *See Starks*, 266 S.W.3d at 613 (where appellant pled guilty and received full credit for the time he had spent in jail, his twenty-five-month pretrial incarceration was not oppressive); I Supp. C.R. at 20 (where Appellant, in correspondence with the

20

district clerk, expressed a willingness to plead guilty to the state jail felony offense). Appellant's pretrial incarceration was not oppressive.

On the issue of anxiety, because Appellant never requested a hearing or made arguments to the trial court, even more than in *Starks* he has "failed to introduce any evidence that the anxiety he suffered either was abnormal or caused his case prejudice." *Starks*, 266 S.W.3d at 613. "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu,* 253 S.W.3d at 286. Additionally, as noted Appellant was incarcerated for much of the time period on another offense, was sentenced to six months in state jail on said offense, and was apparently unemployed (*see* State's Exhibit 11, Part 2 at 15:11:55, 15:13:00 [Appellant has been disabled since 2007]).[4] Where an appellant admits he was unemployed at arrest, that cuts against claims of anxiety. *Romero*, 2013 WL 7964212 at *4 (citing as analogous *Zamorano,* 84 S.W.3d at 654 (noting, among other things, that the delay interfered with the appellant's job)). In such circumstances, Appellant was not subject to anxiety. *See Starks*, 266 S.W.3d at 613.

---

[4] Since different software may time playback differently, all references to video playback times refer to the video's embedded clock.

With regard to the final interest, as in *Dragoo*, Appellant presented no evidence to the trial court that showed his defense was prejudiced. *See* 96 S.W.3d at 315. On appeal, Appellant argues that memories and evidence fade over time. Brief for Appellant at 28-29. However, because "time can tilt the case against either side … one cannot generally be sure which [party] it has prejudiced more severely." *Gonzales v. State*, 435 S.W.3d 801, 813 (Tex. Crim. App. 2014) (involving a speedy-trial motion filed one month after arrest). If anything, because the State has the burden to prove its case beyond a reasonable doubt, delay would seem to be more likely to prejudice the State.

Appellant complains that because of the delay, a store clerk witness – Ms. Rodriguez – relied "solely on the ledger" to indicate the number of cartons missing from the store. Brief for Appellant at 29. However, Ms. Rodriguez testified that she created the receipt the night of the theft after checking in all of her inventory (III R.R. at 67). Furthermore, the witness testified that based on her experience, she trusted the invoices to accurately reflect the product shipments (*id*. at 54). Ms. Rodriguez also demonstrated independent recall of the offense (*see, e.g., id*. at 51 [where she remembers trying to remove the memory card from Appellant's phone and hearing the counter door hit the wall], 55 [where she remembers the product box was full]). Additionally, as described in the statement of facts *supra*, there was

overwhelming video evidence of the thefts, along with Appellant's recorded confession.

Although Appellant also complains generally of fading memories and evidence, the Legislature has determined that a five-year delay is not overly prejudicial in theft cases. Tex. Crim. Proc. Code Ann. § art. 12.01(4). Furthermore, Appellant was arrested for the offense less than a month after it happened, and was made aware of the need to seek and preserve evidence for his defense very close to the time of the offense (I Supp. C.R. at 4).[5] As the Court of Appeals has observed:

> The primary purpose of a statute of limitations is to ensure that claims are asserted within a reasonable time, giving the opposing party a fair opportunity to prepare a defense while evidence is still available. A statute of limitations also ensures that notice of claims is given to adverse parties in order to prevent "fraudulent and stale claims from springing up at great distances of time and surprising the other party."

*Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 472 (Tex. App.—Austin 1994), *writ denied* (Nov. 3, 1994) (internal citations omitted) (in a case involving certified class actions, where "the defendant has been made aware of the need to preserve evidence and witnesses with respect to the claims," tolling did not contravene the purpose of statute of limitations) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)); *see also Hernandez v. State*, 127 S.W.3d 768,

---

[5] Appellant was free on a PR bond for nine months after his Comal County arrest before his subsequent arrest for theft in Bexar County (*id*. at 13, 17). Notably, Appellant also moved for a continuance, further delaying trial (I Supp. C.R. at 43).

772 (Tex. Crim. App. 2004) (allowing prior indictments for similar offenses to toll the statute of limitations did not defeat their purpose, because if "the defendant has adequate notice of a charge, he can preserve those facts that are essential to his defense"); *Green v. State*, 14-08-00075-CR, 2009 WL 136917, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009, no pet.) (mem. op., not designated for publication) ("because both the prior and subsequent indictments pertained to the same conduct stemming from the same transaction, appellant had adequate notice to defend against the charges and preserve the facts that were essential to his defense.").

Appellant cannot show prejudice when – had the State taken no action at all – he could have been prosecuted without warning at an even later date under the statute of limitations. His position becomes even more untenable in light of the fact that he was aware of his need to preserve evidence less than a month after the offense and was free on a PR bond for nine months before he was rearrested. Finally, just as in *Dragoo,* any presumption of prejudice "is extenuated by [Appellant's] longtime acquiescence in the delay." *See* 96 S.W.3d at 315. Accordingly, the fourth factor likewise weighs against finding any violation of his speedy trial right. *See id*. at 315-16.

In *Dragoo*, the Court found that the excessive delay and the State's failure to offer any reason for the delay weighed in favor of finding a violation. *Id*. at 316.

24

The Appellant's failure to demonstrate prejudice and his acquiescence during a large majority of the delay weighed against such a finding. *Id*. On balance, the Court found the factors weighed against finding a violation. *Id*. The balance of the factors in the instant case likewise weigh against such a finding. Even if the delay was excessive as in *Dragoo*, the Appellant's failure to urge the trial court to hold a hearing and develop evidence on the reasons for the delay should weigh against his claim. Regardless, Appellant's clearly expressed desire to have no trial, his acquiescence in the delay and his failure to demonstrate prejudice tip the balance against finding a speedy trial violation even more decisively than in *Dragoo*. *See id*. Accordingly, Appellant's first point of error should be overruled.

## 2. Appellant Cannot Show Ineffective Assistance of Counsel on Appeal

***Ineffective Assistance of Counsel Standard of Review on Appeal***

The Sixth Amendment right to effective assistance of counsel does not provide a right to errorless counsel; it is a right to objectively reasonable representation. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy both prongs of *Strickland*, demonstrating both

25

deficient performance by counsel as well as prejudice suffered by the defendant because of counsel's alleged deficient performance. 466 U.S. at 687; *Menefield v. State,* 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

Under the first prong, the Applicant must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. To satisfy the second prong of *Strickland*, the Applicant has to show the existence of a reasonable probability – one sufficient to undermine confidence in the outcome – that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Failure to make the required showing of either deficient performance *or* sufficient prejudice defeats the ineffectiveness claim. *Strickland,* 466 U.S. at 700; *see Perez v. State,* 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

"It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). In making its assessment of counsel's assistance, the reviewing court examines the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez,* 343 S.W.3d at 142-43; *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Garcia v. State*, 57 S.W.3d 436, 430 (Tex. Crim. App.

26

2001). The reviewing court must presume that counsel is better positioned to judge the pragmatism of the particular case, and that he "made all significant decisions in the exercise of reasonable professional judgment." *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (citing *Strickland v. Washington*, 466 U.S. at 690).

Reviewing courts will indulge in a strong presumption that trial counsel's performance was reasonable. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995). The "[a]ppellant has the burden of proving ineffective assistance by a preponderance of the evidence." *Id*. (citing *Cannon v. State*, 668 S.W.2d 401 (Tex. Crim. App. 1984)). The Court has also noted that "the presumption that trial counsel's performance was reasonably based in sound trial strategy, coupled with the absence of any supporting evidence in the record of unreasonableness, compels a reviewing court to consider ways in which trial counsel's actions were within the bounds of professional norms." *Mata*, 226 S.W.3d at 431.

To prevail on a claim of ineffective assistance of counsel, an appellant must provide a record that affirmatively demonstrates that defense counsel's performance was not based on sound strategy. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). If the appellate record is silent regarding the reasons for defense counsel's conduct, then it is insufficient to overcome the presumption that counsel was following a legitimate strategy. *Tong v. State,* 25 S.W.3d 707, 714

27

(Tex. Crim. App. 2000); *Thompson,* 9 S.W.3d at 813–14; *Jackson v. State,* 877 S.W.2d at 771 (refusing to hold counsel's performance deficient given the absence of evidence concerning counsel's reasons for choosing the course he did).

As the Court stated in *Ex parte Torres*, "[i]n most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim." 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (internal citations omitted). The Court has noted that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2007)).

Accordingly, the Court has repeatedly held that post-conviction writs of habeas corpus are the more appropriate or preferable means of raising a claim of ineffective assistance of counsel. *See, e.g., Rylander*, 101 S.W.3d at 110-11; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Mata*, 226 S.W.3d at 430 ("[t]he lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record").

### A. *Appellant Cannot Show Ineffective Assistance from Mr. Zamora.*

Appellant first complains of Mr. Zamora's representation. To the extent Appellant complains of Zamora's representation related to article 17.151, he cannot show prejudice. Appellant was released on a PR bond after filing a 90-day writ (I Supp. C.R. at 17). As to Appellant's ineffective assistance claim related to the failure to file a 180-day writ (Brief for Appellant at 32), as mentioned, dismissal no longer bars prosecution. *Ex parte Countryman*, 226 S.W.3d at 439. *Griffis v. State*, 441 S.W.3d 599, 606 (Tex. App.—San Antonio 2014), petition for discretionary review refused (Nov. 19, 2014) ("reasonably competent counsel need not perform a useless or futile act"). If his case had been dismissed, he would simply been indicted and rearrested. Appellant presumably did not urge dismissal at trial for this reason.

Furthermore, Appellant was free on a PR bond until he was arrested for a Bexar County offense on December 17, 2012 (I Supp. C.R. at 13). He was sentenced to six months in state jail for the Bexar County offense, and obtained jail-time credit for the amount of time a Comal County hold was placed on him (*see* I C.R. at 101). Because in certain circumstances he might obtain jail-time credit for multiple offenses – effectively serving time cumulatively – Appellant might have made the strategic decision not to pursue dismissal of the Comal offenses since he would be serving time in jail regardless. *See Nixon v. State*, 572

S.W.2d 699, 701 (Tex. Crim. App. 1978) (an appellant is "confined 'on said cause'" when a hold is lodged against him). When Appellant eventually filed a 180-day writ – requesting dismissal with prejudice – the State procured an indictment, making his claim moot. Because Mr. Zamora's reasons for not filing the 180-day writ are not apparent – and given how futile such dismissals are in Appellant's circumstances – Appellant cannot show ineffective assistance related to Mr. Zamora's representation.

### B. Mr. Collins Was Not Ineffective for Failing to Dispute Credible Evidence, Particularly Where Conviction for the "Lesser" Offense Would Still Subject Appellant to the Same Range of Punishment.

Appellant argues Mr. Collins was ineffective for not arguing against the value of the stolen property. Brief for Appellant at 34. However, the evidence introduced at trial was clear and reliable. Ms. Rodriguez, the store clerk, testified that in her experience she had found the delivery invoices to be accurate, and that she trusted them to accurately reflect the products delivered to the store. III R.R. at 54. She had not put any cigarettes on the shelf (*id*. at 52) and she testified that the stolen box was full (*id*. at 55). Further, she created the receipt listing the stolen items close in time to the offense – in fact, on the night of the theft after completely checking in her inventory (*id*. at 67).

30

Counsel observed the witness's testimony at trial, and was best positioned to determine how to approach the testimony in front of the jury. *See Delrio*, 840 S.W.2d at 447. If the cashier's testimony appeared to be credible, trying to attack it before the jury could easily backfire (*see also* III R.R. at 131 [where Mr. Collins stated he had "no intention of arguing" it was a lesser value]). This is particularly true in the instant case; even if Appellant could successfully show the value was less than $1,500, the State had already prepared for that contingency (*see* I C.R. at 10). Appellant's value argument therefore fails – the State would simply have convicted him under Count II. Notably, even if Appellant had been convicted of theft involving an amount less than $1,500 under Count II of the indictment, Appellant would *still* be subject to the same punishment range because of his two prior convictions (*see id.*).

### C. Mr. Collins Was Not Ineffective for Obtaining a Directed Verdict on a Lesser-Included Offense When the "Lesser" Offense Had the Same Range of Punishment.

Appellant next argues that his counsel was ineffective for excluding the lesser-included offense from consideration. Brief for Appellant at 35. Under the doctrine of invited error, Appellant could not generally complain of an error he induced at trial. "The rule of invited error in jury charges is one of long standing …. [courts] will not permit [an] appellant to complain of the trial court's deleting a

31

jury charge as he requested." *Prystash v. State*, 3 S.W.3d 522, 531-32 (Tex. Crim. App. 1999); *see also Druery v. State*, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007) (where defendant – after affirmatively advising the trial judge he did not want a charge on a lesser-included offense – was estopped by the equitable doctrine of invited error from complaining of an action it induced). Although Appellant attempts to circumvent the rule by couching his argument in terms of ineffective assistance, in the particular circumstances of his case, it cannot be ineffective assistance to exclude criminal liability for one of two charged theories with equal punishment ranges.

Courts have observed that it may be a legitimate strategy to pursue an all-or-nothing tactic with lesser-included offenses. *Tolbert v. State*, 306 S.W.3d 776, 781 n.9 (Tex. Crim. App. 2010) (lesser-included offense instructions "frequently depend upon trial strategy and tactics"). "Regardless of which side chooses to 'go for broke,' it may be a valid strategic choice from which neither side should be rescued." *Id.* at 782 (citing *Haynes v. State*, 273 S.W.3d 183, 191 (Tex. Crim. App. 2008) (Johnson, J., concurring)).

Appellant asserts that counsel is per se ineffective when a request for an instruction on a lesser-included offense is not made, if the trial judge would have erred in refusing it. Brief for Appellant at 35-36 (citing *Wood v. State*, 4 S.W.3d

85, 87 (Tex. App.—Fort Worth 1999, pet. ref'd). However, *Wood* actually states that:

> [a] defense attorney's failure to request a jury instruction *can* render his assistance ineffective if, under the particular facts of the case, the trial judge would have erred in refusing the instruction had counsel requested it …. [h]owever, it may be reasonable trial strategy not to request a charge on a lesser-included offense.

4 S.W.3d at 87 (emphasis added). *Wood* went on to observe that there was some question as to whether that counsel had attempted an all-or-nothing tactic. *Id*. at 88. Because that appellant had not filed a motion for new trial and developed a record on his ineffective assistance claim, the court held that he could not "overcome the strong presumption that trial counsel's [all-or-nothing] strategy was reasonable from counsel's perspective at trial." *Id*.

The strong presumption that Mr. Collins' strategy was reasonable is only reinforced by the fact that conviction of the "lesser" offense in the instant case would have subjected Appellant to the same range of punishment. *See* I C.R. at 10, 46 (where Appellant recognized in his Motion for Severance that the two counts had identical punishment ranges); III R.R. at 124. In such circumstances, it cannot be unreasonable to reduce the number of theories upon which Appellant could be found guilty. Additionally, though Mr. Collins was equitably and judicially

33

estopped from arguing the value was less than $1,500,[6] there was still some chance

the jury might determine the State had not met its burden to prove the value was

more than $1,500. *See, e.g.*, II R.R. at 96-97 (where Mr. Collins emphasized in voir

dire that the jury had to find Appellant "not guilty" if the State failed to prove

every element of its case beyond a reasonable doubt); III R.R. at 31-33 (where Mr.

Collins asked the jury to "keep notes" and make sure the State met its burden on

each element, because one element would be missing).

### D. Because Appellant's Suggested Lines of Inquiry Would Have Hurt Him at Trial, Mr. Collins Was Not Ineffective for Failing to Further Cross-Examine the Witness.

Appellant claims Mr. Collins was ineffective for failing to cross-examine

Ms. Rodriguez, the CVS clerk, regarding "blatant discrepancies" in her testimony.

Brief for Appellant at 38. In particular, Appellant claims "the date and time stamp

---

[6] To obtain a directed verdict on Count II, Mr. Collins argued there was "no evidence" that anything less than $1,500 had been stolen (III R.R. at 124). Appellant claims that Mr. Collins thereafter "unnecessarily agreed not to argue the amount to be less than the greater charge" (Brief for Appellant at 36). Appellant could not equitably argue there was no evidence of the lesser value to the judge, obtain a directed verdict, and argue it was a lesser value to the jury. Courts have observed that:

> A party may be estopped from taking a position that is inconsistent with that party's prior conduct. *See Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003) (holding the State was estopped from challenging admissibility of defense exhibits which were certified copies of criminal records summarized in rap sheet produced by State); *see also Jones v. State*, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003) (defendant was estopped from raising issue on appeal that trial court's discharge of juror was inappropriate where defendant himself proposed discharge as alternative to mistrial).

*Schultz v. State*, 255 S.W.3d 153, 155 (Tex. App.—San Antonio 2008, no pet.).

34

on ledger" controvert the witness's assertion that she made document on the night of the theft. *Id*. The theft occurred on November 8, 2011 (III R.R. at 36) between 7:30 and 8:00 p.m. (*id*. at 37, 44). Ms. Rodriguez testified that she made State's Exhibit 6 on the night of the theft (*id*. at 66-67). The time stamp on the receipt in evidence indicates it was printed out at 10:54 a.m. on the morning of November 9, 2011 (V R.R. at 17 – State's Ex. 6). Outside the presence of the jury, the witness had likewise indicated she printed a receipt out on the night of the theft for the police (III R.R. at 59). A police report from the incident apparently indicated a receipt had been printed out, and Detective Wahrmund testified that he received a receipt totaling $1,913.44 during his investigation (*id*. at 61, 121). Ultimately, even if only once such receipt was made early on the morning of November 9 (as opposed to late at night on November 8) Appellant has failed to show how this would create "reasonable doubt" as to the accuracy of the receipt. Mr. Collins could reasonably have determined such cross-examination would be pointless or harmful if the jury thought he was contesting trivialities.

Appellant next complains about Mr. Collins' lack of inquiry into the clerk's knowledge of how many cartons were taken and the reliability of the ledger. Brief for Appellant at 38. Frequently, however, "the decision to not cross-examine a witness is the result of wisdom acquired by experience in the combat of trial." *Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973). Furthermore,

35

"[c]omplete absence of cross-examination may be a legitimate strategy if a cross-examination would only serve to reinforce the prosecution's theory." *Carmona v. State*, 880 S.W.2d 227, 236 (Tex. App.—Austin 1994), *vacated on other grounds,* 941 S.W.2d 949 (Tex. Crim. App. 1997).

In the instant case, Mr. Collins did generally inquire into the capacity of the boxes:

> [Mr. Collins]: "So there's 60 cartons inside the one box?"
>
> [Ms. Rodriguez]: "It varies."
>
> ….
>
> [Mr. Collins]: "And that box, based on your inventory, you showed that there were 36 cart – cartons in that box?"
>
> [Ms. Rodriguez]: "Yes."

III R.R. at 79-80; *see also id.* at 53 (inventories are checked once already when shipped from the CVS warehouse), 54 (Ms. Rodriguez found the invoices reliable), 59 (outside the presence of the jury, Ms. Rodriguez explained a discrepancy in numbers as an initial estimate she later revised upon checking her inventory). From his perspective at trial, Mr. Collins could reasonably determine that any further cross-examination of Ms. Rodriguez would only serve to reinforce the State's case. *See Miniel v. State*, 831 S.W.2d 310, 324 (Tex. Crim. App. 1992).

**E**. *Appellant Argues Outside the Record, and the Only Evidence in the Record Indicates Mr. Collins Was Not Ineffective for Failing to Investigate.*

In his final issue under point of error two, Appellant claims Mr. Collins failed to investigate "the physicality of the evidence." Brief for Appellant at 39. In support of his claim, Appellant refers to evidence outside the record – specifically, to evidence allegedly introduced in Frank Parramore's trial. *Id*. at 40 n.12. "Assertions in an appellate brief that are unsupported by the record will not be accepted as fact." *Ex parte Preston*, 833 S.W.2d 515, 519 (Tex. Crim. App. 1992). "An appellate court may not consider factual assertions that are outside the record." *Whitehead v. State,* 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *see also Brown v. State,* 866 S.W.2d 675, 678 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (refusing to consider material outside the record that was improperly attached to party's appellate brief).

In Appellant's case, there is no evidence in the record that Mr. Collins failed to investigate. It is possible he did investigate and determined that unfavorable answers (*see, e.g.,* III R.R. at 79) would harm Appellant if introduced.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Robertson v. State*, 187 S.W.3d 475,

37

482 (Tex. Crim. App. 2006). Because the lack of a clear record precludes meaningful review of counsel's choices, Appellant cannot show his counsel's strategies were deficient. *See Mata*, 226 S.W.3d at 430. Appellant also fails to show prejudice, or a reasonable probability that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Indeed, four of Appellant's five claims essentially challenging the failure to try to show the value was less than $1,500 are moot: assuming arguendo that fact could be proved at trial, Appellant would have been convicted under Count II, which would have subjected him to the exact same range of punishment (*see* I C.R. at 10). In any event, the evidence of Appellant's guilt was overwhelming, including video of the theft itself and Appellant's recorded confession to being a party to the theft, *supra* (at 3-5).

### 3. The Evidence Was Legally Sufficient to Establish That Appellant Was a Party to the Theft and to Establish Value.

After the decision of the Court of Criminal Appeals in *Brooks v. State*, Texas appellate courts review legal and factual sufficiency challenges in criminal cases using the same legal sufficiency standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Ervin v. State,* 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Evidence is only insufficient if, when considering all the evidence in the light most favorable to the

verdict, "no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). While viewing the evidence in the light most favorable to the verdict, evidence can be insufficient in two circumstances: when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" **or** when "the evidence conclusively establishes a reasonable doubt." *Id*. The evidence may also be insufficient when the acts alleged do not constitute the offense charged. *Id*. at 108.

Legal sufficiency review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319. Reviewing courts determine whether the necessary inferences are reasonable based on the "combined and cumulative force of the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108.

Courts will treat direct and circumstantial evidence equally. *Id*. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id*. Appellate courts will presume that the factfinder "resolved any conflicting inferences in favor of the verdict" and defer to that resolution. *Id*. The reviewing courts will also defer to "the factfinder's evaluation of the credibility and the

weight of the evidence." *Id*. The factfinder is entitled to accept some testimony and reject other testimony, in whole or in part. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *abrogated on other grounds by Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009). In reviewing the sufficiency of the evidence related to party liability, courts will look to:

> "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. Motive is a significant circumstance indicating guilt. Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.

*Guevara v. State*, 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004) (internal citations omitted).

Appellant cites *Roberson v. State*, arguing that just as in that case, there are insufficient factors linking him to the property. Brief for Appellant at 41. *Roberson* is a drug possession case, not a theft case. 80 S.W.3d 730, 741 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). *Felters v. State* is more applicable to the issues in Appellant's case. *See* 147 S.W.3d 488, 490 (Tex. App.—Fort Worth 2004, pet. ref'd).

In *Felters*, the appellant was convicted of theft as a party. *See id.* She challenged the sufficiency of the evidence to prove she was criminally responsible for the theft, arguing that she "did not remove a single item of merchandise from the store …. [or] place[] any item in [c]o-defendant's shopping bag." *Id.* Although the court of appeals noted that mere presence at the scene was not enough, it further observed that events before, during and after the actual offense can be considered to determine whether the evidence was sufficient to show that an accused was a party to an offense. *Id.*

The court then focused on the specific facts of the case: the appellant and co-defendant entered the store together, knew each other, spoke together, shopped together, and stood together while the latter placed items – some of which the appellant handed to her – in the co-defendant's shopping bag. *Id.* When the co-defendant went into the dressing room, the appellant remained nearby waiting for her. Id. The two women left the store together. *Id.* at 491. The court concluded that "[t]he evidence clearly reflects more than mere presence" and deferred to the jury's verdict. *Id.*

Similar to the *Felters* appellant's contention that she "did not remove a single item" herself, Appellant asserts the evidence is insufficient to link him to the stolen property. Brief for Appellant at 41. "A person is guilty as a party, however, even if that person acts only intentionally or knowingly to promote or assist the

41

commission of the offense by another by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense." *Felters*, 147 S.W.3d at 490. There are several facts in Appellant's case which are similar to *Felters*:

- Appellant and Parramore entered the store together (III R.R. 45-46; V R.R. at 9; State's Ex. 5, Part 1);

- Appellant and Parramore knew each other (State's Ex. 11, Part 1 at 15:10:20; State's Ex. 5, Part 1; III R.R. at 111);

- Appellant and Parramore spoke together (State's Ex. 5, Part 1); and

- Appellant and Parramore left close in time to one another (State's Ex. 5, Part 4).

*See Felters*, 147 S.W.3d at 490-91.

Furthermore, whereas the appellant in *Felters* merely shopped with her co-defendant, handed her a few items and stood with her as the co-defendant placed items into her bag, in the instant case, Appellant confessed on video that he and Parramore fenced stolen items (State's Ex. 11, Part 4 at 15:29:20, 15:30:45). They apparently stole merchandise with some regularity; Appellant mentioned several stores (State's Ex. 11, Part 3 at 15:15:45; Part 4 at 15:28:55; Part 5 at 15:31:30). Appellant further admitted his role in distracting the clerk while Parramore stole the merchandise (State's Ex. 11, Part 3 at 15:14:35), though they originally planned to steal razors (State's Ex. 11, Part 1 at 15:10:00; Part 3 at 15:14:30). The jury could observe the clerk walking toward Appellant as he performed exactly as

42

described on video (State's Ex. 5, Part 3), and the clerk testified that it seemed to her that he was acting in concert with Parramore as a distraction (III R.R. at 83-84). After Appellant followed Parramore and the clerk out of the store, he fled when the clerk said she was calling the police (III R.R. at 75-76; State's Ex. 11, Part 4 at 15:17:22). In his haste, Appellant left his wallet and cell phone behind (State's Ex. 11, Part 4 at 15:17:20), which he did not attempt to recover prior to trial (III R.R. at 103). Appellant said he was angry that Parramore did not give him his 'share' of the profits from the theft (State's Ex. 11, Part 1 at 15:10:30; Part 3 at 15:15:23). In sum, there was overwhelming evidence from which a reasonable jury could conclude Appellant was a party to the offense. *See Felters*, 147 S.W.3d at 490-91.

Appellant next attempts to challenge the sufficiency of the evidence to prove the value of the merchandise. Brief for Appellant at 42. The evidence indicated that the value of the stolen merchandise was $1,913.44 (V R.R. at 17; III R.R. at 66). Although Appellant complains of the clerk's reliance on the ledger, Ms. Rodriguez – who had worked at that store for four years at the time of trial (III R.R. at 35) – testified that the ledger was created prior to shipping at the warehouse (*id*. at 53), and she recorded missing product close in time to the offense (*id*. at 67) after checking invoices which she trusted to be accurate (*id*. at 54-55). Ms. Rodriguez also testified the box was full (*id*. at 55), that she had not yet removed any cartons

43

from it (*id.* at 52), and that it was placed behind a counter where the public did not have access to it (*id.* at 75; State's Ex. 5, Part 3). Detective Wahrmund likewise testified that the receipt reflected the amount Parramore took (III R.R. at 121). *See Villani v. State*, 116 S.W.3d 297, 307 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (an investigator's uncontroverted testimony of the value of computer processors was legally sufficient evidence of value). Appellant stresses that the "State even admitted the jury may not believe the quantity or value." Brief for Appellant at 42. However, the fact that the State prepared for contingencies before trial is irrelevant; the jury found the testimony and evidence of value credible, and the Court should defer to "the factfinder's evaluation of the credibility and the weight of the evidence." *See Kiffe*, 361 S.W.3d at 108.

Lastly, Appellant challenges the sufficiency of the evidence to show the number of cartons allegedly contained in the box. First, to the extent Appellant relies on alleged findings in Parramore's case, as discussed *supra* (at 37-38), such argument is outside the record. Second, the *value* of the theft must be proven; a variance in the *number* (*e.g.*, 32 instead of 36 cartons) would not be material unless the corresponding lesser value results in a different offense.

"A defect in a description of property under Art. 21.09, Tex. Code Crim. Proc. Ann. (Vernon 1966), to constitute error, must be of such a degree as to charge no offense against the law and be thereby void. Such is a jurisdictional

44

defect which may be raised for the first time on appeal." *Sanders v. State*, 675

S.W.2d 622, 623 (Tex. App.—Fort Worth 1984, no pet.). Otherwise, if not raised

by a motion to quash, any defect in the description may not be raised for the first

time on appeal. *Id.* at 624. As the Court of Criminal Appeals observed:

> once the defendant has been given proper notice that he must prepare
> to defend himself against a charge that he has stolen a certain
> "bundle" of property, there is no reason that he should be acquitted if
> the evidence shows him guilty of stealing enough of the "bundle" to
> make him guilty of the offense charged.... Likewise, the State should
> be allowed to plead all property which the evidence may ultimately
> prove stolen without thereby being required to prove theft of any
> larger quantum of property than the statute at issue requires.

*Lehman v. State,* 792 S.W.2d 82, 84–85 (Tex. Crim. App. 1990) (citation omitted)

(reviewing a theft case in which several items were alleged to have been stolen);

*see also Byrd v. State*, 336 S.W.3d 242, 257-58 (Tex. Crim. App. 2011) ("We

agree with the *Bailey* dissent that '[t]he word "variance" ought to be used to

describe instances in which there is a minor discrepancy between the facts alleged

and those proved, such as a difference in spelling, *in numerical digits*, or in some

other minor way.'" *Cothern v. State*, 02-13-00466-CR, 2015 WL 2169248, at *2

(Tex. App.—Fort Worth May 7, 2015, no. pet. h.) (not designated for publication)

(emphasis added); Tex. Code Crim. Proc. Ann. art. 21.09 (West, Westlaw through

2013 Sess.) (requiring indictment to include description of personal property, if

known).

In this case, Appellant states that "none of the video or picture evidence admitted in trial indicated the number of cartons actually taken." Brief for Appellant at 42. Though Appellant again takes issue with reliance on the ledger, as discussed *supra*, there was ample evidence and testimony from which a reasonable jury could conclude the elements of the offense had been shown. Because – when considering all the record evidence in the light most favorable to the verdict – it cannot be said that "no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt," the Court should defer to the jury's determination and overrule Appellant's final point of error. *See Kiffe*, 361 S.W.3d at 107-08.

## **Prayer**

Wherefore, premises considered, Appellee respectfully prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case.

JENNIFER THARP
Criminal District Attorney

By

/s/ Joshua D. Presley
**Joshua D. Presley**
SBN: 24088254
Assistant District Attorney
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
Phone: (830) 221-1300
Fax: (830) 608-2008
E-mail: preslj@co.comal.tx.us
Attorney for the State

## *Certificate of Service*

I, Joshua D. Presley, Assistant District Attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellant JERRYL ROBINSON's attorney of record in this matter:

Marilee Hazel Brown
SBN# 24046044
marilee@hazelbrownlaw.com
Hazel Brown Wright Reneau, PLLC
391 Landa Street
New Braunfels, TX  78130
Tel: 830-629-6955
Fax: 830-629-2559
*Attorney for Appellant on Appeal*

By electronically sending it through efile.txcourts.gov to the above-listed email address, this the 15th day of June, 2015.

/s/ Joshua D. Presley
**Joshua D. Presley**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are 11,328 words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Joshua D. Presley

**Joshua D. Presley**